IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 6, 2003 Session

## TONY CARRUTHERS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-25948, Walter Kurtz, Judge, Sitting by Interchange**

_____

**No. W2002-02852-CCA-R7-PD - Filed October 1, 2003**

_____

The State of Tennessee appeals from an interlocutory order of the post-conviction court, permitting the unsealing of biographical information of a jury that was anonymously empaneled. The Defendant, Tony Carruthers, was convicted of the 1994 murders of Marcellos Anderson, his mother Delois Anderson, and Frederick Tucker and was sentenced to death. After his convictions and sentences were affirmed on direct appeal, he filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel. Carruthers sought to unseal the jury records in order to obtain information to support his claim. The post-conviction court ordered the release of the information to only the Defendant's attorneys. The State, pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure, seeks review of this decision. After review, we conclude that the method employed by the post-conviction court in unsealing the jury records was error. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 10; Judgment of the Criminal Court Reversed; Remanded.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Charles R. Ray, Nashville, Tennessee; Larry Copeland, Memphis, Tennessee, for the Appellee, Tony Carruthers.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Alice B. Lustre, Assistant Attorney General, for the Appellant, State of Tennessee.

### OPINION

### Factual Background

The Defendant and his co-defendant, James Montgomery, were convicted by an anonymous Shelby County jury of three counts of first degree murder, three counts of especially aggravated kidnapping, and one count of especially aggravated robbery. The Defendant and Montgomery were

sentenced to death by electrocution for the three murder convictions and received forty years for each of the other offenses. The proof, as summarized by this court, established that:

> Carruthers said he and some other people (he apparently did not mention the other appellants by name) went to Delois Anderson's house looking for Marcellos and his money. Marcellos was not there so Carruthers told Delois to call Marcellos and tell him to come home, "it's something important." When Marcellos arrived, the appellants forced the victims (apparently Tucker arrived with Marcellos) into the Jeep at gunpoint and drove them to Mississippi where they shot Marcellos and Tucker and burned the Jeep. The appellants then drove all three victims back to Memphis in a stolen vehicle. . . . Carruthers stated they drove to the cemetery and put Marcellos and Tucker in the grave. Delois started screaming so one of the appellants told her to shut up or she would die like her son, and then pushed her in the grave.

*State v. Tony V. Carruthers and James Montgomery*, No. W1997-00097-CCA-R3-CD (Tenn. Crim. App. at Jackson, Dec. 21, 1999), *aff'd in part and rev'd in part by* 35 S.W.3d 516 (Tenn. 2000) (co-defendant Montgomery's convictions reversed), *cert. denied*, 533 U.S. 953; 121 S. Ct. 2600 (2001). On March 3, 1994, the three victims bodies were found buried together in a pit that had been dug beneath a casket in a grave in a Memphis cemetery. *Carruthers*, 35 S.W.3d at 524.

As a pre-trial matter, the trial court *sua sponte* ordered that the jury remain anonymous and that a numbering system would be used to identify the jurors. The trial court based the need for juror anonymity upon the following findings:

> To tell you the truth, I have some misgivings about releasing that list early, in light of the history of this case, in light of the threats that have been communicated to Mr. Massey and others, in light of the types of books that were recovered in Mr. Carruthers' cell on tapping phones and following people and that sort of thing, in light of the reluctance witnesses have shown to appear in this case.
>
> And so at this point in time what I'm going to ask you to do is once you make that list, once you compile that list in your office, to seal it and not release it to anyone. Not release it to the State or Mr. McLin or Mr. Archibald or Mr. Carruthers or his investigators or the media or anyone else. . . .
>
> I think the record is replete with references of threats and harassment by Mr. Tony Carruthers. Mr. William Massey filed several affidavits of his own on his own behalf and on behalf of his secretary indicating that he had been threatened personally by Mr. Carruthers, that the car that his daughter drives was specifically identified in one of the threats in a letter authored by Mr. Carruthers, that the color of the toothbrush in his house could be discovered, that he had investigators from out of town that could come in and do all of this work, a threatening call was made to Mr. Massey's office which resulted in his secretary being reduced to tears because of the

-2-

threats that were communicated over the telephone. All of this is in the record. . . .
And there was never any attempt to deny authorship of these letters.

. . . .

It goes back further than that. Mr. Larry Nance was physically intimidated and threatened sufficiently to cause him to want to get off of the case.

This case is replete with threats and intimidation, and Mr. Carruthers standing up and saying today that it never happened doesn't change history. And all that has happened, including the books that were found in his cell, tend to indicate that this is a case that should be viewed in a most serious light, that intimidation and threats and bullying tactics have been a part of this case from day one.

And what I intend to do is to take every measure possible to reduce that sort of conduct as it may apply to witnesses who come in here to testify and jurors who volunteer their time to sit and serve on this jury. And I may well employ a numbering system for this case.

. . . .

. . . And those are the types of things that lead me to believe that this is the type of case, given the charges involved, the facts involved, and the lengthy history of intimidation and threats that exist in this case in the record, that this may well be the type of case that some sort of numbering system would be appropriate for.

And I think it would benefit everyone involved in allowing the jurors to feel freer to respond and freer to stay on the case and to listen to the facts of the case and render – and focus on the facts of the case and render a fair and impartial decision.

The Defendant did contemporaneously object to the trial court's decision to empanel an anonymous jury; however, this issue was not raised by appellate counsel on direct appeal.

The Defendant's convictions and sentences of death were affirmed on direct appeal. The Defendant subsequently filed a petition for post-conviction relief, alleging as a ground for relief that he received ineffective assistance of counsel. Based upon his ineffective assistance claim, the Defendant sought to unseal the jury records so that he could interview (1) a juror who "had misrepresented certain information in the voir dire process" and (2) all jurors regarding the alleged hostile environment at trial and to explore complaints made by the jurors about the Defendant's behavior at trial. The Defendant further argued that unsealing the records was necessary because "[t]he record reflected no particularized inquiry by the trial court with regard to any potential prejudice" to the Defendant." On November 7, 2002, the post-conviction court granted this request, limited release of the information to the Defendant's attorneys, Charles R. Ray and Larry Copeland, and ordered that "neither Mr. Ray nor Mr. Copeland shall release that information to any other person whatsoever without the permission of the Court." Following this ruling, the State filed a Rule 10 interlocutory appeal, which was granted.

## ANALYSIS

In unsealing the records, the post-conviction court's order noted:

> . . . [C]ounsel, whether in civil or criminal cases, often like to interview the jurors after the trial. DR 7-108 (D) recognizes the propriety of interviewing witnesses post trial as long as it is done in an appropriate manner. . . .

> Given the fact that the petitioner has received the death penalty, and is entitled to make all legal challenges to the validity of his conviction and sentence, the Court believes that it is appropriate to give access to the trial jurors. The Court recognizes, as did Judge Dailey in 1996, that there was some indication of possible threats, violence, and intimidation of jury members. It may well be that the trial jurors will be concerned about their safety if they read or heard about the petitioner's threats post trial. While the record does not indicate whether or not this threat and possible intimidation is still a present danger, the Court is of the opinion that a protective order is appropriate.

The State contends that unsealing the juror information was error because:

> [The Defendant] has failed to establish a need for disclosure of the sealed information. . . . [H]is motion fails to seek information that would be admissible during post-conviction proceedings. Testimony of jurors is governed by Rule 606(b), Tenn. R. Evid. . . . Nothing in [the Defendant's] representations to the trial court or this Court support an inference that either "extraneous prejudicial information" or "outside influence" affected the jury in this case. . . . The State submits that, where jurors were given anonymity based upon safety concerns, a defendant must make some showing of a reasonable basis to believe that evidence admissible under Rule 606(b) will be discovered. . . . In the absence of appropriate pleadings, [the Defendant's] request amounts to nothing more than a "fishing expedition" which, given safety concerns that prompted the anonymity order, should not be deemed sufficient to warrant the release of the information.

In rebuttal, the Defendant argues that the unsealing of the juror records was necessary to provide him with information to support his post-conviction claims. Specifically, he contends that this need was evidenced by the following two instances:

> (1) During the course of trial, two of the jurors [numbers 120 and 127] sent a note to Judge Dailey concerning the [Defendant's] offending them. At no time did Judge

Dailey make inquiry of these jurors as to whether their level of offense rose to a bias that precluded them from being fair; and

(2) At some point during the trial, a juror [number 121] who lived on the same street in close proximity to [Defendant's] mother's home was recognized by [the Defendant's] mother, who in turn, communicated that fact to the judge. Had the juror's address been revealed prior to voir dire, [the Defendant] could have exercised a peremptory challenge to strike this juror who had a history with [the Defendant's] family. The juror also recognized that he knew the [Defendant], but failed to communicate that fact to the trial court. Instead of making inquiries as to this juror's knowledge of the [Defendant], the trial court made no inquiry to this juror and whether he recognized the [Defendant] and maintained any bias toward the [Defendant].[1]

The Defendant's post-conviction claim, that appellate counsel was ineffective for failing to challenge these jurors on direct appeal, requires him to establish (1) deficient performance and (2) prejudice resulting from the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

## I. Jurors 120 and 127

First, the Defendant argues that Jurors 120 and 127 were biased against him based upon "[t]he communication from the jurors about [his] 'mannerisms' and the desire that he not stand close

---

[1] We note that the Defendant vigorously argues that "the trial court never established the need for an anonymous jury." Given the scope of this interlocutory appeal, we do not believe it proper for us to determine this issue within this appeal. Rather, we view the issue before us to be limited to the propriety of the post-conviction court's ruling on the issue that was before it, *i.e*, whether the jury records should be unsealed. The issue to be ultimately decided by the post-conviction court will be whether appellate counsel was ineffective in failing to raise this issue. The lower court must have the opportunity to hear evidence on the issue.

For instructional purposes upon remand, the following guidelines should be observed by the post-conviction court in addressing the issue of empaneling an anonymous jury. No Tennessee court has previously ruled on the issue of anonymous juries; however, the Sixth Circuit has articulated guidelines, which we find constructive in determining when circumstances of a case call for the use of an anonymous jury. A court should not order the empaneling of an anonymous jury without "(a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *United States v. Talley*, 164 F.3d 989, 1001 (6th Cir. 1999), *cert. denied*, 528 U.S. 1180, 120 S. Ct. 1217 (2000) (quoting *United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir. 1991)). The anonymity of the jury should be preserved in cases: 1) with very dangerous persons who were participants in large scale organized crime, and who participated in mob-style killings and had previously attempted to interfere with the judicial process; 2) where defendants have had a history of attempted jury tampering and serious criminal records; or 3) where there have been allegations of dangerous and unscrupulous conduct by the defendant, coupled with extensive pretrial publicity. *Id.* In deciding to empanel an anonymous jury, the court must ensure that the defendant retains his or her right to an unbiased jury by conducting "a voir dire designed to uncover bias as to issues in the cases and as to the defendant himself," and by providing the jury a neutral and non-prejudicial reason for requiring that it be anonymous, so that jurors will refrain from inferring that anonymity was necessary due to the character of the defendant. *Id.* (quoting *Paccione*, 949 F.2d at 1192).

to the jurors. . . ." Specifically he contends that he needs to interview the entire jury panel concerning the hostile environment surrounding the trial and to explore complaints by juror's about his behavior during trial. The record reflects that Jurors 120 and 127 sent a note to the trial judge complaining about the Defendant "scratching or pulling around his groin when standing facing the jury. We find this very offensive," and a second note asking the trial judge why Carruthers "was constantly asking the same question over and over." *Carruthers*, 35 S.W.3d at 553 n. 35. Based upon these communications, the Defendant was requested to stand further away from the jury box.

> Tennessee Rule of Evidence 606(b) provides:
>
> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether <u>extraneous prejudicial information</u> was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

(Emphasis added). "Extraneous information" is information from a source outside the jury. *Caldararo v. Vanderbilt University*, 794 S.W.2d 738, 742 (Tenn. App. 1990).

> External influences which could warrant a new trial if found to be prejudicial include: (1) exposure to news items about the trial; (2) consideration of facts not admitted in evidence, and (3) communications with non-jurors about the case. Internal influences that are not grounds to overturn a verdict include: (1) discussions among jurors; (2) intimidation or harassment of one juror by another; (3) a juror's personal experiences not directly related to the litigation, and (4) a juror's subjective thoughts, fears, and emotions.

*Id.* (citations omitted).

Within the context of Rule 606(b), a prejudicial influence on a jury may be in the form of fact or opinion. *State v. Blackwell*, 664 S.W.2d 686, 688-89 (Tenn. 1984). The juror's communications about the Defendant's mannerisms did not come from a source outside the jury but, rather, were observations by the jurors during trial. We conclude that Jurors 120 and 127's communications concerning the Defendant's mannerisms were not external influences with the ambit of Rule 606(b). These mannerisms may have caused Jurors 120 and 127 to have a negative opinion of the Defendant; however, it is not information from a source outside the jury.

The public policy considerations behind Rule 606(b) are obvious. These considerations include the prevention of jury harassment, encouragement of free and open jury deliberation, promotion of finality of verdicts, and the reduction of the incentive for jury tampering. The right to impeach a jury verdict is extremely limited.

Furthermore, the State argues that, "if the alleged discomfort was, in fact, the result of the [Defendant's] own behavior, it cannot serve as the basis for relief." We agree. To grant relief under these circumstances would, in effect, encourage and reward a Defendant's misconduct at trial. Relief is not available to a party responsible for the error. Tenn. R. App. P. 36(a). Accordingly, the jury records do not need to be unsealed in order for the Defendant to establish the prejudice prong of his ineffective claim.

Moreover, we agree with the State that the Defendant's attempt to interview the jurors on this basis amounts to nothing more than a "fishing expedition." The jurors in this case understood that their names and addresses would not be given out. There is no reason to breach this understanding eight years later.

> Members of the community who devoted their time to jury service have the right to be left in peace and not to be disturbed by belated objections of Defendants or their attorneys. Jurors are under no obligation to answer questions by defense attorneys for Defendants even when they have not served on an anonymous jury.

*United States v. Ruggiero*, 850 F. Supp. 186, 188 (E.D.N.Y. 1994). Furthermore,

> This duty and service of the highest obligation of citizenship should be an interesting and rewarding experience to be looked back on with interest and pleasant recollection by those who are privileged to be selected.

> The mere fact that a trial has ended does not mean that the criminal justice system should disregard any rights of these members of the public. If these rights are disregarded, the justice system can only add to the difficulties already experienced in getting prospective jurors to participate in the system, especially in a trial that is lurid and highly publicized.

*State v. Pennell*, 583 A.2d 1348, 1353 (Del. 1990) (internal citation omitted).

## II. Juror 121

The Defendant alleges that Juror 121 knew his family and, therefore, allegedly provided false information during voir dire by failing to disclose this fact. The Defendant also argues that Juror 121 conveyed his negative history with the Defendant's family to the other jury members, thereby injecting extraneous prejudicial information into jury discussions.

According to the affidavit of Patsy Weber, the Defendant's jury consultant in this case, she was "informed by either Mrs. Carruthers, Tony Carruthers' mother, or John Billings, the State appointed investigator who reported that Mrs. Carruthers told him, that a member of the anonymous jury panel lived in her neighborhood." This information was received after the jury had been selected and the trial was in progress. Apparently, family members of the Defendant's family

recognized Juror 121.[2] Weber then informed the trial court of the information she had received. Weber stated, "Some days later, Mr. John Billings called me and told me that Judge Dailey had met with the juror and attorneys, told the juror he was no longer anonymous, and gave him the option of remaining on the jury or being excused. The juror chose to remain."

Essentially the Appellant's claim raises two separate issues: (1) juror misconduct alleging misrepresentation of pertinent facts during voir dire; and (2) challenging the validity of the verdict pursuant to Rule 606(b), Tennessee Rules of Evidence. The two are distinct as "Rule 606(b) applies to juror deliberations, but it does not apply to pretrial voir dire." Fed. R. Evid. 606, Commentary. We conclude that either of these two grounds, if properly established, may constitute a basis for unsealing the jury records. Accordingly, we, in turn, examine the Defendant's issues.

## A. Juror Misconduct

The Sixth Amendment to the United States Constitution and Article I, Section IX of the Tennessee Constitution guarantee a criminal Defendant the right to trial "by an impartial jury." Moreover, the Tennessee Constitution guarantees every accused "a trial by a jury free of . . . disqualification on account of some bias or partiality toward one side or the other of the litigation." *State v. Akins*, 867 S.W.2d 350, 354 (Tenn. Crim. App. 1993) (quoting *Toombs v. State*, 270 S.W.2d 649, 650 (Tenn. 1954)). Thus, the function of voir dire is essential. Voir dire permits questioning by the court and counsel in order to lead respective counsel to the intelligent exercise of challenges. *Id.* (citing 47 AM. JUR. 2D *Jury* § 195 (1969)). "Since full knowledge of facts which might bear upon a juror's qualifications is essential to the intelligent exercise of peremptory and cause challenges, jurors are obligated to make 'full and truthful answers . . . neither falsely stating any fact nor concealing any material matter.'" *Id.* at 355 (quoting 47 AM. JUR. 2D *Jury* § 208 (1969)).

The common law rules governing challenges to juror qualifications typically fall in two categories: *propter defectum* or *propter affectum*. An objection based upon general disqualifications, such as alienage, family relationship, or statutory mandate, falls within the *propter defectum*, or "on account of defect," class, and, as such, must be made before the return of a jury verdict. *Id.* *Propter affectum*, meaning "on account of prejudice," is based upon the existence of bias, prejudice, or partiality towards one party in the litigation actually shown to exist or presumed to exist from circumstances and may be challenged after the return of the jury verdict. *Id.* This court has

---

[2] We also note that, according to the affidavit of Terrance Carruthers, the Defendant's brother, Juror 121 and the Defendant's family had an unfriendly relationship as neighbors. Terrance Carruthers stated that "during the Summer of 1992, . . . there was a complaint filed by Juror No. 121, to the Memphis Police Department[,]" which alleged that "it was a person from our household who ran over his mailbox." Additionally, Terrance Carruthers reported that "in November, 1993, Juror No. 121 also called the Memphis Police Department to our home on 2013 Pamela . . . in response to a welcome home party for my brother Tony Carruthers who had just been released from custody of the Tennessee Department of Corrections." However, this affidavit was filed after this appeal was initiated, was not considered by the post-conviction court, and this court entered an order dated April 3, 2003, denying it as a supplement to the record. Accordingly, this affidavit is not properly before this court. *Danny Ray Meeks v. State*, No. 01C01-9709-CC-00387 (Tenn. Crim App. at Nashville, Oct. 23, 1998). However, the affidavit and any related testimony will be relevant upon remand.

described "bias in a juror [as] a leaning of the mind; propensity or prepossession towards an object or view, not leaving the mind indifferent; a bent; for inclination." *Id.* at 354 (citation omitted). Thus, when a juror conceals or misrepresents information tending to indicate a lack of impartiality, a challenge may properly be made in a motion for new trial. *Id.* at 355.

"When a juror willfully conceals (or fails to disclose) information on voir dire which reflects on the juror's lack of impartiality, a presumption of prejudice arises." *Id.* (citing *Durham v. State*, 188 S.W.2d 555, 559 (Tenn. 1945)). The presumption of bias, however, may be dispelled by an absence of actual favor or partiality by the juror. *See State v. Taylor*, 669 S.W.2d 694, 700 (Tenn. Crim. App. 1983), *perm. to appeal denied*, (Tenn. 1984). Moreover, the Defendant bears the burden of providing a prima facie case of bias or partiality. *Akins*, 867 S.W.2d at 355 (citing *Taylor*, 669 S.W.2d at 700). We conclude that the Defendant has established a compelling need for interviewing Juror 121 in order to determine whether Juror 121 willfully concealed information during voir dire, whether he was biased against the Defendant based upon his history with the Defendant's family, and whether he conveyed that information to the other jurors.

## B. Rule 606(b)

As previously noted, Rule 606(b), Tennessee Rules of Evidence, prohibits extraneous prejudicial information from being brought to the jury's attention. A juror's personal experiences directly relating to the parties may be extraneous information. *United States v. Herndon*, 156 F.3d 629, 636 (6th Cir. 1998) (holding that juror's recollection during jury deliberations that he might have had prior business dealings with the defendant constituted evidence of extraneous rather than internal influence on jury deliberations); *see also* Fed. R. Evid. 606 n.23; *United States v. Perkins*, 748 F.2d 1519, 1529-30 (holding that juror's failure to reveal during voir dire that he had served on a committee with the defendant was extraneous information); *State v. Crenshaw*, 64 S.W.3d 374, 393-94 (Tenn. Crim. App. 2001); *State v. Ruth Stanford*, No. 02C01-9812-CC-00365 (Tenn. Crim. App. at Jackson, Oct. 6, 1999). "An extraneous influence on a juror is one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Herndon*, 156 F.3d at 636.

Although jurors may be asked about extraneous information imparted, they may not be asked about "the effect of that information on the juror's mental processes or the jury's deliberations." *Gall v. Parker*, 231 F.3d 265, 333 (6th Cir. 2000) (quoting *Bibbins v. Dalsheim*, 21 F.3d 13, 17 (2d Cir. 1994)); *see also* Fed. R. Evid 606, Commentary; *United States v. Simpson*, 950 F.2d 1519, 1521 (10th Cir. 1991) (juror may testify as to whether any extraneous prejudicial information was improperly brought to bear on juror deliberations, but a juror may not testify as to the effect the outside information had upon the juror). For these reasons, we conclude that Rule 606(b) permits the other jurors to testify whether Juror 121 related information to them about his prior history involving the Defendant and/or his family. This is relevant to both whether Juror 121 was truthful during voir dire and whether he imparted extraneous information to other jurors at any time.

## C. Guidelines

The following determinations must be made upon remand. If questioning during voir dire should have reasonably solicited the information concerning Juror 121's history with the Defendant's family, then the Defendant may proceed with a juror misconduct claim.[3] This inquiry focuses upon the issue of whether the questions as poised were sufficient to establish that Juror 121 willfully concealed or failed to disclose his history with the Defendant's family. If the proof reveals that the Defendant conveyed this information to the other jurors but did not willfully conceal information during voir dire, then the Defendant may proceed with a Rule 606(b) claim. If the proof shows both that the Defendant willfully concealed information during voir dire and that he conveyed that information to the jury, then the Defendant may proceed under either theory of relief.

In accordance with these guidelines, the following procedures should be employed upon remand to maintain the appropriate balance between jury anonymity and the Defendant's right to pursue his claims. First, defense counsel may interview Juror 121. We note that Juror 121 is no longer anonymous as he was identified by the Defendant's mother; nonetheless, the following procedures should be followed upon remand. The interview shall be held within 30 days from the entry of this order and shall occur at a mutually agreeable time and location. The scope of the examination shall be limited to alleged misrepresentations during voir dire and any communications with other jurors about knowledge of the Defendant and/or his family.

Second, if defense counsel believe they have a basis for going forward, a hearing shall be conducted in which Juror 121 may testify and other relevant witnesses may be presented. In addition, the Defendant may testify as to why he did not object to Juror 121 remaining on the panel, and appellate counsel may also testify as to why they did not pursue this issue in the motion for new trial and on appeal.

Third, if the post-conviction court is able to determine the issue of ineffective assistance of counsel without the necessity of evidence from the remaining jurors, then there is no reason to secure information from the other jurors. However, if information from other jurors is necessary to determine the issue, the following procedures shall be used. Jurors will be individually contacted by the clerk's office as to whether he/she wishes to remain anonymous. If not, he/she may be interviewed only as to whether Juror 121 revealed information to them relating to his personal knowledge of the Defendant or his family and, if so, the nature and content of this information. A juror may not be asked about the effect of such information upon deliberations. For those jurors wishing to remain anonymous, defense counsel and counsel for the State shall submit written questions, or interrogatories within the above guidelines, to be approved by the post-conviction judge, which will be given to the Criminal Court Clerk. Each juror will answer these questions in writing, under oath, and in the presence of the clerk by signing as "Juror No.__;" thus, their anonymity will be preserved.

Fourth, the post-conviction court will then determine whether the information is sufficient for a determination of the issue of ineffective assistance of counsel. In the event the post-conviction court determines that testimony of the jurors is necessary, the jurors shall be summoned by the

---

[3]We are constrained to note that the voir dire of the prospective jurors was not included within the record.

clerk's office, so as to retain their anonymity, and shall testify by using the designation "Juror No. __." Neither their names nor addresses need to be revealed.

## CONCLUSION

Based upon the foregoing, we reverse the order of the post-conviction court unsealing the juror records and remand for further proceedings consistent with this opinion.

_____
DAVID G. HAYES, JUDGE