IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on briefs FEBRUARY 14, 2012

## STATE OF TENNESSEE v. WILLIE CALVIN TAYLOR, JR.

**Appeal from the Circuit Court for Dyer County**
**No. 09-CR-490    R. Lee Moore, Jr., Judge**

---

**No. W2011-00671-CCA-R3-CD  -  Filed June 18, 2012**

---

The defendant, who had previously been convicted of a felony drug offense, was convicted as a felon in possession of a firearm after a jury trial and sentenced to six years in prison. On appeal, the defendant contends that the evidence was insufficient to support the guilty verdict and that the jury was improperly influenced by information outside the evidence presented at trial. The trial court found that the evidence supported the conviction and the defendant was not prejudiced by any extraneous information. After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

James E. Lanier, District Public Defender, and Timothy Boxx, Assistant Public Defender, for the appellant, Willie Calvin Taylor, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen W. Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual Background and Procedural History

The defendant, Willie Calvin Taylor, Jr., was arrested after a traffic stop during which police searched his vehicle and recovered a loaded revolver from the locked glove compartment. The defendant was charged with knowingly possessing a handgun after having been convicted of a felony drug offense.

At trial, the defendant stipulated both a prior conviction for a felony drug offense and that the vehicle in question was registered in his name. Prior to the selection of the jury, the judge explained that the purpose of voir dire was to allow the attorneys to "make sure that they are seating a jury that can try the issue of guilt or innocence in this case solely and alone on the evidence that is presented through the witnesses that testify today and the law as the Court will charge you." During voir dire, the State asked the potential jurors if any of them knew the defendant, and none of the potential jurors responded that they did. After the jury had been selected, the judge admonished the jury not to discuss the case among themselves until the judge instructed them to begin to deliberate. The judge further admonished the jurors, "[B]ase your decision solely on the evidence you hear in the courtroom."

At trial, Mason McDowell, an officer with the Dyersburg Police Department, testified that on October 19, 2009, he and two other officers heard loud music emanating from a vehicle "well in excess of fifty feet" away. Concluding that the vehicle was violating a city ordinance and a state law regarding sound amplification, the officers stopped the defendant, who was driving the vehicle. Officer McDowell testified that he did not know the defendant at the time but that the defendant goes by the street name "Mack." The officers arrested the passenger, James Vaughn, after determining he had a warrant for violation of probation, and he was transported from the scene by another unit.

After the removal of James Vaughn, Officer Shawn Crouch and a "K9 drug dog" arrived. The dog indicated the presence of illegal drugs in the vehicle, and officers searched the vehicle. No drugs were found. In the course of the search, Officer McDowell shut the ignition off and used the ignition key, which was attached to a leather key chain with the word "Mack" printed on it, to unlock the glove compartment. In the glove compartment, Officer McDowell found a black nylon bag with a Smith & Wesson .357 revolver. The weapon was fully loaded with six rounds inside; five additional rounds were found in the bag. At trial, Officer McDowell produced the weapon from an evidence box; a black powder from the gun was transferred to his hands, and he testified that it "appears to me to be" from the gun having been fired previously. Officer McDowell testified that the weapon's trigger required a good deal of force that "[a] weapon of this size would be fired no doubt with two hands . . . as powerful as it is." Officer McDowell testified that no fingerprints were found on the gun or on the ammunition.

Along with the weapon in the glove compartment, Officer McDowell also found (1) a receipt from a Super 8 Motel in the defendant's name, showing an arrival date of September 12, 2009 and a departure date of September 13, 2009; (2) an application for a driver's licence in the defendant's name dated June 29, 2009; (3) a vehicle registration issued to the defendant on June 8, 2009; (4) the defendant's driver's license; and (5) the defendant's social security card. Officer McDowell further testified that the glove compartment also

contained paperwork for the vehicle and the owner's manual. The first three items were made exhibits at the trial, and Officer McDowell testified he left the other items in the car. Officer McDowell stated that he showed the gun to the defendant when he discovered it in the glove compartment and that the defendant never denied that it was his. According to Officer McDowell, when he recovered the gun, he asked the defendant if he had been convicted of a felony and if he was on parole, and the defendant replied yes to both questions. Officer McDowell asked why the defendant had not given his parole card. At that point, the defendant refused to answer any further questions.

Chris Clements, an officer with the Dyersburg Police Department, was the next witness to testify for the State. Officer Clements corroborated that he and Officer McDowell stopped the defendant for a noise violation, that they arrested Mr. Vaughn on an outstanding warrant, and that Officer McDowell then found a .357 revolver in the glove compartment of the vehicle. Officer Clements testified that they had seen the defendant driving his vehicle numerous times in that neighborhood. He further testified that he was with the defendant when the gun was recovered and that the defendant never denied that it was his weapon. He also stated that the defendant was cooperative and answered questions while he was there.

Bessie Mae Mann, the defendant's mother, took the stand to testify on behalf of the defendant. Ms. Mann testified that she received cancer treatment in Jackson. According to Ms. Mann, on the day of the defendant's arrest, she had driven the defendant's vehicle on her way to her treatment because an indicator light had come on in her vehicle.

Ms. Mann testified that the pistol belonged to her and that she had put it in the glove compartment. Ms. Mann did not know what time she would be returning from the hospital and, as she had lymphoma and had had several surgeries as well, she did not want to be on the road at night "with nothing." Ms. Mann testified that a couple of times in the past, her treatment has lasted until nine o'clock. Ms. Mann had obtained the gun from her husband, Nathaniel Mann, who passed away in September of 2008, but she did not know where he got the gun. According to Ms. Mann, neither she nor Mr. Mann ever registered the gun but Mr. Mann, who also owned "a couple" of shotguns, had had a permit to carry a handgun; the permit was introduced as an exhibit at trial. Ms. Mann confirmed that the gun was loaded but stated she had never fired that particular weapon. She did not have a permit to carry a handgun.

According to Ms. Mann, on the day of the defendant's arrest, she left for her appointment in the defendant's vehicle but decided to check her appointment card after she had gotten on the highway. Ms. Mann discovered that her appointment was on a different day. She then returned the defendant's vehicle. When Ms. Mann found out about the defendant's arrest, she immediately called his parole officer and told the parole officer that

the weapon belonged to her, relating the circumstances above. She said she also testified to the same at the defendant's parole hearing. Ms. Mann testified that she was not telling this story to protect her son but because it was the truth and because she wanted to take responsibility for her actions. Ms. Mann testified that she was aware that her son was convicted of a felony and could get into trouble for possessing a handgun. On cross-examination, the State asked Ms. Mann whether she had testified at the parole hearing that she had put the gun in the car a week prior to the arrest and that her treatments were in Memphis. She responded she had not told the parole board.

For the purpose of rebuttal, the State called Cathy Cavness to testify. Ms. Cavness, a supervisor with the Dyersburg 911 dispatch and certified user of the National Crime Information Center, testified regarding a hit confirmation on the weapon, which showed it was reported as a stolen gun from Memphis in September of 2006.

Officer McDowell was also recalled for rebuttal and testified that, at the parole hearing, Ms. Mann had testified that she put the gun in the vehicle over a week before the defendant's arrest. Officer McDowell also testified that he saw Ms. Mann on a weekly basis driving her White 1999 Yukon and had never seen her in the defendant's black 1994 Cadillac. On cross-examination, Officer McDowell testified that he did not bring a recording of the parole hearing because he had not expected there would be any discrepancy in Ms. Mann's testimony. He testified he never investigated Ms. Mann's claims regarding the origin of the gun or regarding borrowing the defendant's car to drive to her treatments. He also testified that he did not charge the defendant with possession of marijuana because there were only trace amounts in the carpet of the car and he could not collect it.

The jury found the defendant guilty of possession of a firearm after having been convicted of a felony, and he was sentenced to six years' incarceration. Although it is unclear from the record how the facts supporting the defendant's allegation of extraneous prejudicial information came to light, the defendant moved for a new trial based on several grounds, including a juror's exposure to extraneous prejudicial information regarding his criminal history. Washonda Ceaser, one of the jurors at the defendant's trial, had remained silent during voir dire when asked if she knew the defendant. As the trial progressed, however, Ms. Ceaser realized that she had worked with the defendant's sister and with his cousin at McDonald's. Although the testimony at trial had been that the defendant's nickname was "Mack," Ms. Ceaser realized that she had prior knowledge of the defendant when someone referred to him as "Cal." Ms. Ceaser did not recognize the defendant during voir dire. On cross-examination Ms. Ceaser acknowledged that she knew that the defendant "had spent a good deal of time in the penitentiary." The trial court did not allow the State to ask Ms. Ceaser about any effect the knowledge may have had on deliberations. Ms. Ceaser also testified that she did not communicate any information she knew about the

defendant to the other jurors. The court found that the evidence was sufficient to sustain the verdict and that there was no presumption of prejudice, as the jury was already aware that the defendant was a convicted felon.

## Analysis

### A. Sufficiency of the Evidence

The defendant contests the sufficiency of the evidence supporting his conviction for possession of a firearm after having been convicted of a felony drug offense pursuant to Tennessee Code Annotated section 39-17-1307(b)(1)(B) (2010). The defendant contends that there was "no proof" that the weapon belonged to him, that he ever handled it, or that he knew it was in the glove compartment.

Tennessee Rule of Appellate Procedure 13(e) allows a conviction to be set aside "if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." A challenge to the sufficiency of the evidence requires the reviewing court to decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard applies whether the evidence supporting the conviction is direct, circumstantial, or a combination of direct and circumstantial. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). On appeal from a conviction, the presumption of innocence is replaced by a presumption of guilt, and the defendant bears the burden of proving that the evidence was insufficient to support the jury's verdict. *State v. Williams*, 38 S.W.3d 532, 536 (Tenn. 2001). The State is entitled to "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom," *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999), nor may the appellate court re-weigh or re-evaluate the evidence or substitute its inferences for those of the jury, because a jury verdict approved by the trial judge resolves all conflicts of evidence in favor of the State's theory. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Conflicts regarding the credibility of witnesses, the weight and value of the evidence, and factual issues raised by the evidence are resolved by the trier of fact. *State v. Schmeiderer*, 319 S.W.3d 607, 635 (Tenn. 2010).

The evidence supporting a conviction may be sufficient although it is exclusively circumstantial. *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010). The amount of weight to be given to circumstantial evidence, the inferences to be drawn from circumstantial evidence, and the extent to which circumstantial evidence is consistent with guilt are questions for the jury. *Id.*

In *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011), the Tennessee Supreme Court recently set forth a new standard. Noting that the United States Supreme Court and federal courts of appeal have found that circumstantial and direct evidence should be treated the same when the defendant appealed the sufficiency of the evidence, the Court adopted the federal standard, which does not require the evidence to exclude every reasonable hypothesis save that of guilt. *Id.* at 380-81 (citing *Holland v. United States*, 348 U.S. 121, 140 (1954), for the proposition that "[c]ircumstantial evidence . . . is intrinsically no different from testimonial evidence" because, while both may occasionally point to an incorrect result, the jury is tasked with resolving the probabilities and concluding the defendant is guilty beyond a reasonable doubt). Accordingly, our review of the evidence must merely conclude that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319.

Tennessee Code Annotated section 39-17-1307(b)(1) provides that "[a] person commits an offense who possesses a firearm, as defined in § 39-11-106, and . . . (B) Has been convicted of a felony drug offense." The defendant's conviction of a felony drug offense was stipulated at trial. While the statute itself does not contain a requisite mental state, it also does not, contrary to the State's assertion, plainly dispense with a mental state, and "intent, knowledge or recklessness suffices to establish the culpable mental state." T.C.A. § 39-11-301(c). "[A] person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T. C. A. § 39-11-302(b). Reckless conduct is when the defendant is "aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur," and this disregard "constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." T.C.A. § 39-11-302(c).

Possession may be actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). To demonstrate constructive possession, the State must show that the defendant had "the power and intention at a given time to exercise dominion and control" over an object. *Id.* (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997) (finding constructive possession when contraband was found in the front seat of car occupied and driven by defendant and passenger testified defendant had handled it)". "In essence, constructive possession is the ability to reduce an object to actual possession." *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979) *abrogated on other grounds by United States v. Moya*, 74 F.3d 1117, 1120 (11th Cir. 1996)).

We conclude that the evidence adduced at trial is sufficient to support the defendant's

conviction as a felon in possession of a firearm. While the evidence showing that the defendant was knowingly in possession of the handgun was circumstantial his possession was rather directly proven. It is the province of the jury to make determinations about the credibility of witnesses and the inferences to be drawn from the proof at trial. The defendant's mother presented one explanation for the presence of the gun in the locked glove compartment of the defendant's vehicle: that she put a loaded handgun with five additional rounds of ammunition in the glove compartment of the defendant's vehicle for protection en route to and from her cancer treatment, which she subsequently discovered was on a different day. The evidence also established that the gun, which was a heavy weapon needed to be fired with two hands, was stolen, that it was locked in the glove compartment of the defendant's vehicle, and that the defendant used the same locked glove compartment to store important personal documents such as his social security card. The glove compartment had been accessed to store a receipt with the defendant's name at least as recently as approximately five weeks before the arrest. The gun was covered with a black powder, and neither the gun nor the ammunition had fingerprints on them. Whether due to the impeachment testimony of Officer McDowell, the physical evidence regarding the size, origin, and condition of the weapon and the presence of additional ammunition, or conjecture regarding the motivation behind the testimony, the jury clearly did not find the defendant's mother to be a credible witness. After the jury chose to discredit the defendant's mother's testimony, it concluded that the defendant had the requisite mens rea and the ability to reduce the firearm to actual possession. We cannot say that no rational trier of fact could have found his guilt beyond a reasonable doubt.

### B. Juror Bias and Extraneous Prejudicial Information

The defendant next challenges the trial court's refusal to grant him a new trial due to Ms. Ceaser's familiarity with his prior record. At the hearing on the motion for a new trial, the defense established that, during trial, Ms. Ceaser realized she had prior knowledge of the defendant. This knowledge consisted of the fact that he "had spent a good deal of time in the penitentiary," although she did not know the specifics of his past convictions. The trial court did not allow the State to question Ms. Ceaser regarding any effect this information may have had on her, but did allow the State to establish that she had not shared any extraneous information with the rest of the jury.

Both the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution guarantee the right to a trial by an impartial jury. To secure this right, the jury must be "free of . . . disqualification on account of some bias or partiality toward one side or the other of the litigation." *State v. Akins*, 867 S.W.2d 350, 354 (Tenn. Crim. App. 1993) (quoting *Toombs v. State*, 270 S.W.2d 649, 650 (Tenn.1954)). Such a jury "is influenced only by legal and competent evidence produced during trial." *State v.*

*Hugueley*, 185 S.W.3d 356, 377 (Tenn. 2006) (quoting *State v. Lawson*, 794 S.W.2d 363, 367 (Tenn. Crim. App. 1990)). However, the defendant is entitled to a fair trial but not a perfect trial, *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984), and the ultimate inquiry is whether the jury that tried the case was actually fair and impartial. *See State v. Howell*, 868 S.W.2d 238, 248 (Tenn. 1993) (finding that refusal to excuse juror for cause is harmless error unless the jury which heard the case was not fair and impartial); *see also McDonough Power Equip., Inc.*, 464 U.S. 548 at 554.

The defendant challenges the trial court's refusal to grant him a new trial due to the jury's exposure to extraneous prejudicial information. When a juror has been exposed to prejudicial information – such as knowledge of the defendant's criminal history – prior to being selected to serve on the jury, the defendant may be able to challenge the verdict based on an allegation of juror bias or misconduct. On the other hand, when one or more jurors are exposed to extraneous prejudicial information after having been selected to serve on the jury, the defendant may proceed with a claim that the jury has been tainted by external influences. *See Carruthers v. State*, 145 S.W.3d 85, 92 (Tenn. Crim. App. 2003). In *Carruthers v. State*, the defendant's mother recognized a juror as one of her neighbors during trial. Although the court in *Carruthers* noted that "[a] juror's personal experiences directly relating to the parties may be extraneous information," *id.* at 95, the court separated the defendant's request for relief into two claims, one alleging misconduct due to false voir dire answers and one based on extraneous information that may have been imparted to the jury. Thus, the court concluded that if the evidence showed that the juror had answered incorrectly during voir dire, the defendant would be able to proceed with a juror misconduct claim and that if the evidence showed that the juror had imparted his prior knowledge of the defendant to the rest of the jury, the defendant would be able to request a new trial based on the presence of extraneous prejudicial information. *Id.* at 95-96.

While the defendant in the case at bar has framed the issue as one of extraneous prejudicial information coming before the jury, it is clear that his claim encompasses both possible prejudice arising from Ms. Ceaser's misleading answer during voir dire regarding her prior knowledge of the defendant and possible prejudice arising from any communication of that prior knowledge to the jury that was selected. We will therefore proceed to analyze both claims.

When the jury has been exposed to extraneous information which is found prejudicial, the defendant is entitled to a new trial. *Carruthers*, 145 S.W.3d at, 92. Furthermore, "when it has been shown that a juror was exposed to extraneous prejudicial information or subjected to improper influence, a rebuttable presumption of prejudice arises, and the burden shifts to the State to explain the conduct or demonstrate that it was harmless." *Walsh v. State*, 166 S.W.3d 641, 647 (Tenn. 2005). Under Tennessee Rule of Evidence 606(b),

> [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention . . . .

This is a rule of evidence and not a rule of law. *Akins*, 867 S.W.2d at 355. "[E]xtraneous information is information from a source outside the jury." *Caldararo v. Vanderbilt University*, 794 S.W.2d 738, 742 (Tenn. Ct. App. 1990). External influences include: (1) exposure to news items about the trial; (2) consideration of facts not admitted in evidence, and (3) communications with non-jurors about the case. *Carruthers*, 145 S.W.3d at 92. Ms. Ceaser was properly permitted to testify under Rule 606(b) regarding her knowledge of the defendant and whether she imparted her knowledge of the defendant to the other jurors. While inquiry into the jury's deliberations is prohibited, the court may determine whether the communication took place and whether there is a "reasonable possibility" that the communication altered the jury's verdict. *Walsh*, 166 S.W.3d at 649. As the only testimony on record indicates that the jury as a whole, once it had been selected, was not exposed to extraneous information, the defendant is not entitled to relief on this issue.

On the other hand, Ms. Ceaser clearly possessed extraneous information about the defendant, and the defendant may assert that he is entitled to a new trial due to juror disqualification. Challenges to juror qualifications generally fall into one of two categories: *propter defectum* challenges based on a disqualification due to circumstances such as alienage, family relationship, or statutory mandate, which must be brought prior to the verdict, and *propter affectum* challenges based on bias, prejudice or partiality, which may be brought after the return of the verdict. *Carruthers*, 145 S.W.3d at, 94. A *propter affectum* challenge must be sustained either where the defendant shows actual bias or where bias or partiality is presumed. *Hugueley*, 185 S.W.3d at 378. It is the defendant's burden to establish a *prima facie* case of juror bias. *State v. Robinson*, 146 S.W.3d 469, 523 (Tenn. 2004). However, a presumption of bias arises in cases where "a juror willfully conceals (or fails to disclose) information on voir dire which reflects on the juror's lack of impartiality." *Smith v. State*, 357 S.W.3d 322, 348 (Tenn. 2011); *Akins*, 867 S.W.2d at 355 (holding that "when a juror's response to relevant, direct voir dire questioning . . . does not fully and fairly inform counsel of the matters which reflect on a potential juror's possible bias, a presumption of bias arises"). A juror who remains silent when faced with a material question reasonably calculated to elicit the response at issue has essentially answered in the negative. *Smith*, 357 S.W.3d at 348. Nevertheless, when a presumption of prejudice arises, it may be rebutted by

an absence of actual prejudice. *Akins*, 867 S.W.2d at 357.

In *State v. Akins*, the court noted that when a juror's voir dire responses are false or misleading, intent is not dispositive of the issue, and a mistaken answer also raises the presumption of bias. Id. at 356 n.15. However, in *Akins*, the juror deliberately gave false answers and otherwise demonstrated actual bias against the defendant. *Id.* at 357. *Akins* cites *Hyatt*, 430 S.W.2d 129 (Tenn. 1967) to support the proposition that intent is not dispositive. *Hyatt* is similar to the case at bar in that a juror did not realize he knew the defendant – and in fact had at one point procured a search warrant for her premises – until another juror referred to her by a nickname during deliberations. Although the Court noted that "[w]here the jury or a juror has prejudged the case . . . the courts say it must be presumed that his prejudices enter into and become a part of the result," it did so based on the finding that the juror was actually hostile to the defendant. *Hyatt v. State*, 430 S.W.2d at 129-30. Federal courts have not presumed bias for innocent misrepresentation during voir dire. *U.S. v. Solorio*, 337 F.3d 580, 595-596 (6th Cir. 2003) (finding that "[i]f information is not deliberately concealed, bias may not be inferred. Instead, 'the movant must show actual bias' in order to obtain a new trial" (quoting *Zerka v. Green*, 49 F.3d 1181, 1186 (6th Cir. 1995))). For the claims at issue in this case, it is unnecessary to decide whether a presumption of prejudice was raised, because any such presumption was sufficiently rebutted by facts introduced at trial and at the hearing on the motion for a new trial.

In the case at bar, Ms. Ceaser inadvertently misinformed the court that she did not know the defendant because she did not recognize him during voir dire. Even if this raised a presumption of prejudice, the presumption of prejudice was rebutted by the circumstances surrounding the trial and Ms. Ceaser's realization. First and most significantly, evidence at trial informed the jury that the defendant had been convicted of a felony drug offense. Ms. Ceaser's knowledge of the defendant's criminal history was not detailed and differed only slightly from the proof presented at trial. At the hearing for the motion for a new trial, Ms. Ceaser testified that she did not know about the specifics of the defendant's criminal past but agreed she knew he had spent "a good deal of time" in prison. Second, Ms. Ceaser's failure to reveal her knowledge of the defendant during voir dire was inadvertent; her innocent misrepresentation supports a finding that she did not harbor a bias against the defendant. *See, e.g., State v. Troglin*, No. E2005-02015-CCA-R3-CD, 2006 WL 2633107, at *20 (Tenn. Crim. App. Sept. 14, 2006). Additionally, the trial court instructed the members of the jury to base their decision on the evidence presented at trial, and juries are presumed to follow their charge. *See State v. Banks*, 271 S.W.3d 90, 134 (Tenn. 2008). Furthermore, Ms. Ceaser never informed the other members of the jury that she knew the defendant had spent "a good deal of time" in confinement. This Court has not required a new trial under similar fact patterns when the defendant claimed juror bias. *See Troglin*, 2006 WL 2633107, at *20 (juror, who negligently responded incorrectly at voir dire, was aware of defendant's

conviction for a prior homicide, although jury as a whole was only informed of defendant's indictment for the homicide; a new trial was not granted because "all the jurors knew information similar to what [he] knew about the Defendant" and "such exposure did not prejudice the Defendant's case"); *State v. Sparks*, No. M2005-02436-CCA-R3-CD, 2006 WL 2242236 (Tenn. Crim. App. Aug. 4, 2006) (juror was the defendant and his mother's former landlord, but did not recognize him during voir dire and had only a passing acquaintance with him, although she was involved in a dispute over the deposit with the defendant's mother); *see also Robinson*, 146 S.W.3d at, 522 -523 (finding no "nexus" between defendant and juror who was a deputy jailer and assigned to the defendant's pod for three hours). We cannot say that one juror's inadvertent misrepresentation of her knowledge of the defendant's criminal history, knowledge which was similar to evidence presented at trial, fatally tainted the jury's verdict.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE