FILED

06/30/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

## STATE OF TENNESSEE v. DEMARCO CORTEZ TAYLOR

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1655     J. Randall Wyatt, Jr., Judge**

_____

**No. M2016-01436-CCA-R3-CD**

_____

Defendant, Demarco Cortez Taylor, was convicted by a jury of aggravated robbery, aggravated burglary, and employing a firearm during the commission of a dangerous felony. He received an effective sentence of ten years for the convictions. On appeal, Defendant challenges: (1) the trial court's denial of the motion to suppress; (2) the State's use of improper leading questions; (3) the exclusion of the victim's recorded interview; (4) the omission of a jury instruction on intoxication; (5) the sufficiency of the evidence supporting the convictions for aggravated robbery and employing a firearm during the commission of a dangerous felony; (6) the denial of a new trial on the basis of jury bias; (7) an excessive sentence; and (8) cumulative error. After a review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

David von Wiegandt, Nashville, Tennessee, for the appellant, Demarco Cortez Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jude Santana and Jeff Jackson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Brittany Lovell, the victim, identified Defendant as the man who broke into her home on March 27, 2014. Defendant voluntarily came into the police precinct after the offense. After waiving his *Miranda* rights, Defendant was interviewed by police from

the Metropolitan Nashville Police Department. Defendant was subsequently indicted by the Davidson County Grand Jury for aggravated robbery, aggravated burglary, and employing a firearm during the commission of a dangerous felony. Prior to trial, counsel for Defendant filed a motion to suppress the statement Defendant gave to police.

At the hearing on the motion, Detective Michael Windsor testified that he was assigned to investigate the burglary and robbery at Ms. Lovell's home. On March 28, 2014, the day after the incident, Defendant came to the police station voluntarily. At the time, he was not under arrest.[1] According to Detective Windsor, Defendant "heard that we had been out asking about his name and everything so he took it upon himself to meet with us." Detective Windsor did not see any "indication . . . that [Defendant] was under the influence of anything to the point that it would impair his judgment at all." In fact, during the waiver of rights, Defendant was asked if he was intoxicated or taking drugs. Defendant informed the detective that he had taken Lortab but that he was not intoxicated. Detective Windsor described Defendant as "lucid" and commented that Defendant gave "sharp responses" to questions.

Defendant informed the detective that he finished tenth grade and lived with his mother. Defendant claimed that he spent the night prior to the interview with a female friend, specifically his "baby mama's sister." When initially asked about the incident, Defendant informed the detective that he was riding dirt bikes in Antioch from 2:00 p.m. until around 6:00 p.m. Defendant first insisted that he was at the home of his female friend around 6:30 a.m. that morning, around the same time the burglary took place. Then, Defendant admitted that he stopped by his mother's house which was located near the victim's home. Defendant admitted that he had been to the victim's house a few days prior to the incident. He was looking for "Tony T," the father of one of the victim's children. Defendant and Tony T used drugs together. Defendant had used drugs with Tony T at the victim's home. They smoked marijuana sprinkled with cocaine.

Approximately thirty minutes into the interview, Defendant mentioned that he was "tired." Around this same time, Defendant started making admissions that he was involved in the incident. Defendant initially claimed that he did not remember the incident because he had blacked out from using Lortab and Xanax but later admitted that he entered the house to get drugs. Defendant was "cooperative" during the interview. He eventually stated that he thought the house was empty because he did not see the victim's car. Defendant admitted that he confronted a child when he entered the house. He claimed that he was holding a silver and black can of mace concealed inside his sleeve so

---

[1] While Defendant was not under arrest for the current offense at the time of the interview, he was informed by officers at the beginning of the interview that there were outstanding warrants for his arrest on unrelated matters.

that only the circular nozzle was visible. The house was dark. Defendant admitted that he took a maroon tablet, a pink and white tablet, a white cell phone, and money. The officers walked out of the interview room for a few minutes, and Defendant put his head down on the table. Detective Windsor described this behavior as "not unusual for most people." When "the questioning was basically over" Defendant told the officers he could get a female friend to give some of the victim's property back. Defendant also admitted that he wore a wig and entered the home through the window even though he could not recall how he removed the air conditioner from the window.

The trial court denied the motion to suppress, noting that at the beginning of the interview, Defendant had his head on the table for about thirty seconds but sat up and appeared "alert" when Detective Windsor entered the room. The trial court characterized Defendant's speech as "coherent" and noted Defendant claimed familiarity with *Miranda* warnings at the beginning of the interview. The trial court found that Defendant was "able to respond to specific questions in a detailed way." The trial court noted that Defendant again placed his head on the table during the interview, after "essentially" making a confession but that it "appear[ed] to be more a sign of dejection than sleep deprivation." Defendant mentioned being tired but "never trie[d] to deny the admissions." As a result of the review of the video, the trial court determined that Defendant knowingly waived his rights and denied the motion to suppress.

At trial, the victim testified that on March 27, 2014, she was living at James Cayce Homes on South Sixth Street with her three children, ages two, three, and four. The night before, she worked late at WalMart and cashed her paycheck so that she could pay the babysitter who watched her children while she was at work. For unknown reasons, Ms. Lovell took a picture of the cash and posted the picture on Instagram. She woke up around 6:30 a.m. the morning of the incident. Ms. Lovell asked her oldest son to go downstairs to get his school shoes. She "heard a big old clash noise like something fell in the house." She "jumped out of bed and went to the top of the steps." She was carrying her youngest son in her arms. When she got to the top of the steps she could see and hear someone else "running up the steps." Ms. Lovell thought it was her son but was met by "a man with a mask on his face, saying 'get down on the ground, face down.'" Ms. Lovell immediately recognized the voice as belonging to "Coco," Defendant's nickname. Defendant was wearing a big "60s afro wig" with a "Louis Vuitton hat[] on top of the wig," red Jordan tennis shoes, and "something black around his face." Defendant had a gun "wrapped" with the "sleeve [of his shirt] around it." He asked Ms. Lovell where the "money" was located. She told him it was on the dresser in her bedroom. Defendant asked Ms. Lovell where the "rest" of the money and "drugs" were located. He "continued to start searching through all of the drawers and looking on the [other dresser]." He told her to stay still and "nobody [would] get hurt." While he was searching on the dresser, Ms. Lovell saw Defendant pull the mask down.

Ms. Lovell's oldest son finally came upstairs. The man told him to sit on the bed with his siblings and stay still. The children complied while Defendant led Ms. Lovell into the children's room and asked if there was "anything" in the room. Ms. Lovell informed him that there was nothing in the children's room. Defendant "pointed the gun . . . between [Ms. Lovell's] legs" and asked if there was "anything down there." Ms. Lovell told Defendant there was nothing and informed him that she was on her period. Defendant turned back into the bedroom where the children were sitting on the bed. Defendant opened the closet and told them to get in the closet and stay there until instructed to do otherwise. Ms. Lovell was certain Defendant was holding a gun. Defendant took the cash, cigarettes, tennis shoes, several small computer tablets, and a telephone.

Ms. Lovell and her children stayed in the closet for about six minutes. It was quiet outside, so Ms. Lovell said, "Hello." Defendant told her to "Get back in the closet." She got back in the closet and waited a little while longer before exiting the closet. She checked out the house to make sure Defendant was gone while the children stayed in the closet. When she realized Defendant was gone, she ran back upstairs to get the children and left the apartment to go to the babysitter's house to call the police.

Ms. Lovell testified that she had seen Defendant ten to fifteen times around the area in which she lived prior to this incident. In fact, about two days prior to the incident, Defendant knocked on her door, entered her home, and asked her "for a ride to the Tiger Market on Shelby." At the time, he was wearing red Jordan tennis shoes identical to those worn by the person that broke into her apartment. She identified Defendant as that person in a photographic lineup and at trial.

Officer Gregory Lyons responded to the dispatch from the 911 call. He described the victim as frightened "almost to the point where she was crying." The victim identified the perpetrator as "Coco." Officer Lyons knew this to be Defendant's nickname.

Detective Windsor also interviewed the victim. She reported that Defendant was armed with a silver and black handgun. In a jury-out hearing, counsel for Defendant informed the trial court that he wanted to introduce the victim's recorded interview into evidence in order to show that the victim's recollection of the events was inconsistent with her trial testimony. In order to bolster his argument, counsel for Defendant asked Detective Windsor if, at one point during an interview, the victim stated that Defendant touched the outside of her groin area with his finger as he pointed at her and asked if she had anything in there. There was discussion about the fact that there was a sexual investigation by Officer Michael Bennett that did not result in an indictment. Officer

Bennett was subpoenaed for trial but, at the time of trial, was retired. The trial court tried to get the State to stipulate that Officer Bennett "indicated that [Defendant] pointed his finger towards the woman's private area." The State declined. Court adjourned for the evening.

The next morning, in a jury-out hearing, counsel for the State explained that the victim's statement contained several references to Defendant's gang affiliation and that "both sides have agreed not to introduce the victim's statement in full." Counsel for Defendant explained that he had several more questions to ask Detective Windsor during cross-examination and asked the trial court "if he says he doesn't remember can I play that portion of the statement?" The trial court agreed but counsel for the State noted the "challenge would be how do we introduce that to the jury without introduction of the entire statement?" The trial court put Detective Windsor on the stand in a jury-out hearing to assess his recollection of the events. Portions of the recording were played for the detective during the jury-out hearing to refresh his recollection. The trial court was satisfied with Detective Windsor's responses to questioning during the jury-out hearing such that it would be unnecessary to introduce the victim's statement.

Detective Windsor was cross-examined by counsel for Defendant in front of the jury. He confirmed that he reviewed the interview of the victim which took place in the patrol car. During the interview, the victim's mother approached the car. At one point, the victim's mother exclaimed, "Instagram will get you killed." Detective Windsor claimed that the victim spoke of "giving [Defendant] a ride in the past." On redirect, counsel for the State asked the detective if it was his "understanding that a deadly weapon was used in the commission of this [crime]." The detective recalled that, "according to the statement, yes." The detective also recalled the victim informing him that Tony T did not live at the residence. However, on re-cross, Detective Windsor admitted that the victim stated Tony T comes over to the house at times to take care of his child. Counsel for Defendant did not seek to introduce the statement of the victim.

Defendant did not put on any proof at trial. The jury found Defendant guilty of aggravated robbery, aggravated burglary, and employment of a firearm during the commission of a dangerous felony. After a sentencing hearing, the trial court sentenced Defendant to nine years for the aggravated robbery conviction and four years for the aggravated burglary conviction, to be served concurrently with each other but consecutively to the six-year sentence for employing a firearm during the commission of a dangerous felony, for a total effective sentence of fifteen years. Defendant later filed a motion to correct the sentence on the basis that the sentence for employing a firearm during the commission of a dangerous felony could not run consecutively to the aggravated robbery sentence because the indictment specified aggravated burglary as the predicate felony rather than aggravated robbery. The trial court agreed and entered

amended judgments to reflect that Defendant's six-year sentence for employing a firearm during a dangerous felony would run consecutively to the four-year sentence for the conviction for aggravated burglary. The nine-year sentence for the conviction for aggravated robbery would run concurrently to the sentences for employing a firearm during the commission of a dangerous felony and aggravated burglary. Additionally, all three sentences were ordered to run concurrently to Defendant's prior conviction for aggravated assault.

After the denial of a timely motion for new trial, Defendant appealed, raising the following issues for our review: (1) whether the trial court erred in denying the motion to suppress his statement; (2) whether the trial court erred by allowing improper leading questions; (3) whether the trial court erred by excluding the victim's recorded interview; (4) whether the trial court erred by refusing to instruct the jury on intoxication; (5) whether the evidence was sufficient to support the convictions for aggravated robbery and employing a firearm during the commission of a dangerous felony; (6) whether the trial court should have granted a new trial on the basis of jury bias; (7) whether the ten-year effective sentence was excessive; and (8) whether cumulative error should result in a new trial.[2]

*Analysis*

*I. Denial of the Motion to Suppress*

Defendant argues on appeal that the trial court improperly denied the motion to suppress his statements to police because he was "too intoxicated to understand his *Miranda* rights[ ] and therefore did not freely and voluntarily make his statements to police." Defendant insists that the totality of the circumstances show that he was "clearly sleep deprived and intoxicated," and the trial court should have suppressed the statement after viewing the recording. The State disagrees, pointing to Defendant's "cohesive narrative of events" and self-reported familiarity with *Miranda* to support the voluntary waiver of rights.

In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact "unless the evidence preponderates otherwise." *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014) (citing *State v. Climer*, 400 S.W.3d 537, 556 (Tenn. 2013)). Witness credibility, the weight and value of the proof, and the resolution of conflicts in the proof "are matters entrusted to the trial court as the trier of fact." *Id*. at 529. "The party prevailing in the trial court is entitled to the strongest legitimate view of

---

[2] We have reorganized and renumbered Defendant's issues on appeal.

the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The trial court's resolution of questions of law and application of the law to the facts are reviewed de novo with no presumption of correctness. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008). When reviewing a trial court's ruling on a motion to suppress, this Court "may consider the entire record, including not only the proof offered at the hearing, but also the evidence adduced at trial." *State v. Williamson*, 368 S.W.3d 468, 473 (Tenn. 2012) (citing *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998)).

The constitutions of the United States and Tennessee protect a suspect from "being compelled to give evidence against himself." *State v. Berry*, 141 S.W.3d 549, 576 (Tenn. 2004) (citing U.S. Const. amend. V; Tenn. Const. art. I, § 9); *see also State v. Turner*, 305 S.W.3d 508, 515 (Tenn. 2010). Statements made during the course of a custodial police interrogation are inadmissible at trial unless the State establishes that the defendant was advised of his right to remain silent and his right to counsel and that the defendant then waived those rights. *Miranda v. Arizona*, 384 U.S. 436, 471-75 (1966); *see also Dickerson v. United States*, 530 U.S. 428, 444 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). A defendant's rights to counsel and against self-incrimination may be waived as long as the waiver is made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 478; *State v. Middlebrooks*, 840 S.W.2d 317, 326 (Tenn. 1992).

The test for voluntariness under the Tennessee Constitution is broader and more protective of individual rights than under the Fifth Amendment. *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996). In order to determine the voluntariness of a statement, a court must "examine the totality of the circumstances surrounding the giving of a confession, 'both the characteristics of the accused and the details of the interrogation.'" *Climer*, 400 S.W.3d at 568 (quoting *Dickerson*, 530 U.S. at 434); *see also Monts v. State*, 400 S.W.2d 722, 733 (Tenn. 1966). Factors relevant to this determination include:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured[,] intoxicated[,] or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep[,] or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

*Id.* (alterations in original) (quoting *State v. Huddleston*, 924 S.W.2d 666, 671 (Tenn. 1996)); *see also State v. Blackstock*, 19 S.W.3d 200, 208 (Tenn. 2000) (recognizing that no single factor is necessarily determinative). "[I]ntoxication does not render a confession invalid if the evidence shows that the defendant was capable of understanding and waiving his rights." *State v. James David Johnson*, No. W2006-01842-CCA-R3-CD, 2008 WL 540505, at *5 (Tenn. Crim. App. Feb. 6, 2008) (citing *State v. Bell*, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985)), *no perm. app. filed*; *see also State v. Anthony Porrazzo*, No. E2014-02335-CCA-R3-CD, 2015 WL 9259996, at *5-6 (Tenn. Crim. App. Aug. 18, 2015), *perm. app. denied* (Tenn. May 5, 2016).

In this case, the record does not support Defendant's claim that his statement was involuntarily given. Defendant, who attended high school until the tenth grade, was provided with *Miranda* warnings and signed a waiver of his rights. He expressed familiarity with *Miranda* based on his prior interaction with authorities. Defendant was not sick or injured during his interview. There is no evidence that Defendant was abused or deprived of food or sleep during the relatively short interview. Although Defendant claimed to be intoxicated because he was tired and under the influence of Lortab, his demeanor and speech belied that contention. Defendant coherently answered the questions in a concise, clear manner. Though not eloquent, Defendant was polite and able to provide fairly detailed descriptions of his actions that day, including descriptions of the property he took from the victim's residence. While Defendant did claim he was tired and lay his head down on the table, this occurred after he confessed to the crime near the end of the interview. In our view, the circumstances surrounding the statement support the trial court's determination that Defendant knowingly and voluntarily waived his rights. Defendant is not entitled to relief on this issue.

## II. Leading Questions

Prior to trial, Defendant filed a motion in limine seeking to prohibit leading questions about whether a firearm was used during the commission of the offense. On appeal, Defendant complains that counsel for the State asked the victim multiple leading questions about whether Defendant possessed a firearm during the commission of the offense. Defendant also complains that Detective Windsor was asked leading questions about whether a firearm was used during the offense in violation of Tennessee Rule of Evidence 611. The State claims that Defendant waived the issue for failing to object to the questions at trial and that, in any event, the trial court did not abuse its discretion in controlling the examination of the witnesses at trial.

Defendant's motion in limine sought to "prevent the State from asking any leading questions to the alleged victim about a firearm or any weapons" in accordance with Rule 611 of the Tennessee Rules of Evidence. The trial court granted the motion. Defendant

points to the following questions asked by the State during the direct examination of the victim:

STATE: Could you see the top part, the barrel of the gun?

THE VICTIM: Yes, it was black.

. . . .

STATE: So he is gesturing toward you with a weapon when he gives you the command to get down?

THE VICTIM: Yes.

. . . .

STATE: Okay. Did you believe what he had in his hands was in fact a pistol or a weapon?

THE VICTIM: Yes.

STATE: Okay. Did you get a clear, this is important, did you get a clear look at it as you sit there do you believe that he had a gun in his hands?

THE VICTIM: Yes.

The victim then gave a detailed description of Defendant forcing her and her children into the bedroom closet. Then the following colloquy occurred:

STATE: So you were forced to go in the closet at gunpoint?

THE VICTIM: Yes.

STATE: At this point did he still have the gun in his hand?

THE VICTIM: Yes.

STATE: Could you see it as clearly as you are sitting there now?

THE VICTIM: Yes.

- 9 -

STATE: And there was a light on in the kids room?

THE VICTIM: Yes.

STATE: Was there any doubt at all what was. . .

COUNSEL FOR DEFNENDANT: Objection to leading.

THE COURT: It's overruled.  Ask the question and let her answer though.

STATE: Could you clearly see what was in his hand?

THE VICTIM: Yes.

STATE: Okay.  Is there any doubt in your mind as to what it was?

THE VICTIM: No.

. . . .

STATE: Okay. And was all of this property taken from your residence on the morning of the 27th of March, 2014?

THE VICTIM: Yes.

STATE: And was it taken without your permission by threat of force, chiefly a gun?

THE VICTIM: Yes.

Defendant also complains about several questions about the gun on redirect examination of the victim.  Defendant points to the following exchange:

STATE: Okay.  Now, they are wanting to make light of the lack of light on the stairs.  Did you see the gun on the stairs as well as in your bedroom?

THE VICTIM: Yes.  I seen [sic] when he, when I was able, when he came up the steps and I was able to see him visibly while he was still on

the stairs I seen [sic] the gun just as well as I seen [sic] it pointed at me in the bedroom.

. . . .

STATE: I want to make sure that we are using the correct terminology, when you demonstrated with your sleeve what part of the gun was covered, the grip is the part that you hold on the bottom with your hand and then the barrel is the part that protrudes, you indicated that the shirt covered the barrel?

COUNSEL FOR DEFENDANT: Objection to leading.

THE COURT: Just asked her what she observed?

STATE: Okay.

THE COURT: And if you remember what she said you can say it again.

STATE: When you described the shirt covering the gun, did it cover the part with the hand?

COUNSEL FOR DEFENDANT: I will object again, because we have gone through this multiple times.

THE COURT: Ask that question a different way where she can answer it. She has already answered it two or three times.

STATE: The shirt that [Defendant] was wearing did it cover the bottom part, top part, or entire gun?

THE COURT: She can answer that.

THE VICTIM: It, it covered like this part, the part that shoots out was sticking out, but like this and the part that you hold like this was . . .

THE COURT: Use this thing here (tendered gavel to witness) and show the jury what you are saying. I never use that thing, but why don't you use it.

THE VICTIM: Okay.

THE COURT: Do you know what the pistol, what the barrel is of that, if that was a barrel?

THE VICTIM: This part (illustrating) was covered, the shirt, the shirt was over like this finger.

STATE: So there is the part that you hold which is the grip and then the barrel is the round part that sticks out.

THE VICTIM: Right. The barrel, the tip of the gun it wasn't covered.

STATE: Okay. So you could see the barrel of the gun?

THE VICTIM: Right.

        . . . .

STATE: Could you see the end of the gun?

THE VICTIM: Which part is the end, the top part (using gavel).

STATE: Did you see, the part that he is not holding could you see it?

THE VICTIM: Yeah.

STATE: Okay. And based upon your seeing that part of the gun did you feel that your life was in danger and that of your children as well?

COUNSEL FOR DEFENDANT: Objection to leading.

THE VICTIM: Yes.

Defendant claims that Tennessee Rule of Evidence 611 supports the exclusion of the questions and insists that these are "all clearly leading questions" and "extremely prejudicial" because they go to the sufficiency of the evidence and were "used by the State to hammer home to the jury that this object was an actual weapon in order to get a conviction" for employing a firearm during the commission of a dangerous felony. Defendant recognizes the trial court's wide discretion in controlling leading questions.

First, we note that contrary to the State's argument, the issue is not waived for failure of Defendant to object to the questions at trial. Tennessee Rule of Evidence 103(a) provides that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Defendant properly raised this issue in a motion in limine. The trial court granted the motion. He was not then required to object at trial every time the State asked a leading question. The issue is properly before this Court.

Rule 611 of the Tennessee Rules of Evidence charges the trial court with "exercis[ing] appropriate control over the presentation of evidence and conduct of the trial when necessary to avoid abuse by counsel." Part (c) of the same rule pertains to leading questions and cautions that they "should not be used on direct examination of a witness except as may be necessary to develop the witness's testimony." Absent a clear abuse of discretion that results in manifest prejudice to the defendant, this Court will not interfere with the trial court's exercise of its discretion on matters pertaining to the examination of witnesses. *State v. Johnson*, 670 S.W.2d 634, 636 (Tenn. Crim. App. 1984) (citing *Monts v. State*, 379 S.W.2d 34 (Tenn. 1964)).

We have reviewed each of the questions asked of the victim as challenged by Defendant on appeal. We agree that some of the questions are leading questions but decline to find any of these questions impermissibly prejudicial. At the beginning of the victim's testimony, the jury heard the 911 call by the victim. The victim informed the 911 operator that Defendant had a gun during the incident. Moreover, the majority of the questions complained of were intended to put into words the victim's illustrative physical demonstrations or further develop and clarify the victim's description of the incident. The trial court did not abuse its discretion. Defendant is not entitled to relief on this issue.

Defendant also challenges several questions asked of Detective Windsor. Defendant insists the questions about whether the detective understood a weapon was used during the commission of the offense were improper because they were extremely prejudicial. Defendant's brief cites Tennessee Rule of Evidence 611 and claims "[t]he same standard of review applies here as does in Issue II" regarding the victim's testimony. We find Defendant's brief on this issue inadequate, as it does not set forth any real argument. *See* Tenn. Ct. Crim. App. Rule 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). In any event, the testimony of Detective Windsor, like the testimony of the victim, occurred after the jury heard the 911 tape during which the victim explained that the perpetrator had a gun when he broke into her house, held her at gunpoint, stole her belongings, and forced her and her young children into a closet at

gunpoint. Detective Windsor was not testifying that he had personal knowledge of a gun being used during the commission of the offense. Rather, his testimony resulted from the information he received from the victim about the incident. Defendant is not entitled to relief on this issue.

### *III. Exclusion of the Victim's Statement as Substantive Evidence*

Defendant alleges that the trial court erred by refusing to allow "the introduction of the victim's recorded interview with detectives as substantive evidence pursuant to Rule 803." Defendant insists that the recorded statement is inconsistent with the victim's testimony at trial because, in the recorded statement, the victim stated that Defendant pointed his finger at her genital area and at trial she testified Defendant pointed a gun at her genital area. The State argues that the issue is waived.

At trial, the victim testified that Defendant pointed a gun at her genital area during the incident. The victim also testified that Tony T was not active in her child's life and had not been to her house for two months. Counsel for Defendant claimed that during a recorded interview with Detective Windsor, the victim stated that Defendant pointed a finger at her genital area, not a gun, and that Tony T came to the house and cared for their child on occasion. Counsel for Defendant then sought to introduce the recorded statement of the victim to impeach the victim's testimony. The trial court declined to allow the statement to be introduced but allowed counsel for Defendant to question Detective Windsor outside the presence of the jury as to his recollection of the victim's statements during the recording. The recorded statement is not a part of the record on appeal.

This issue is not properly before this Court. Tennessee Rule of Evidence 103(a)(2) prohibits a defendant from challenging a trial court's ruling excluding evidence unless the defendant presented the substance of the evidence and the specific evidentiary basis supporting its admission to the trial court by an offer of proof, or it was apparent from the context. Defendant did not seek to make an offer of proof with the recording itself. The recording was never entered as an exhibit, even for identification purposes. Now, on appeal, Defendant has attached a copy of what he purports to be the recorded statement to his brief. The attachment to Defendant's brief is inadequate for appellate review without it having been made a part of the record at trial or on appeal in this case. *See State v. Matthews*, 805 S.W.2d 776, 783 (Tenn. Crim. App. 1990) ("Rule 28, Tennessee Rules of Appellate Procedure, does not contemplate attaching a transcript of proceedings to a brief when the transcript has not been made a part of the record."). The burden is on Defendant to present an adequate record for appellate review. *See State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). By failing to do so, Defendant has waived this issue.

*IV. Jury Charge on Intoxication*

Next, Defendant questions the trial court's refusal to include a jury charge on the defense of intoxication. Defendant filed a motion in limine to include a jury instruction on voluntary intoxication pursuant to Tennessee Code Annotated section 39-11-503. The trial court reserved ruling on the motion to the conclusion of the proof. After hearing argument from Defendant and the State, the trial court denied the motion.

A defendant in a criminal case "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *see State v. Leath*, 461 S.W.3d 73, 105 (Tenn. Crim. App. 2013). When reviewing jury instructions on appeal to determine whether they are erroneous, this Court must "review the charge in its entirety and read it as a whole." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). A jury instruction is considered "prejudicially erroneous" only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id*. A jury instruction on a general defense is not required to be submitted to the jury unless it is "fairly raised by the proof." T.C.A. § 39-11-203(c). Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

Voluntary intoxication is not a defense to a criminal offense unless the intoxication negates the specific intent required by the crime. *Harrell v. State*, 593 S.W.2d 664 (Tenn. Crim. App. 1979). Both burglary and robbery qualify as specific intent offenses; the "elements of [the] crime[s] include [the] defendant's intent to achieve some result additional to the act." *Harrell*, 593 S.W.2d at 670. To obtain a conviction for aggravated burglary, the State must prove that Defendant, at the time he entered the dwelling, intended to commit a felony. *See* T.C.A. §§ 39-14-402, -403. For aggravated robbery, the State must prove that Defendant intended to permanently deprive the owner of the property taken by the display of a deadly weapon. *See* T.C.A. §§ 39-13-401, -402; 39-14-103. The burden lies with the defendant to establish sufficient proof that he was intoxicated to warrant a jury instruction on voluntary intoxication. *Hicks v. State*, 533 S.W.2d 330, 331-32 (Tenn. Crim. App. 1975) (holding that the "mere fact that there was some evidence that the defendant had been drinking, without more, is not sufficient to raise the issue of voluntary intoxication"). However, when the evidence establishes that a defendant was "highly intoxicated," a jury instruction will be warranted even without a special request. *Brown v. State*, 553 S.W.2d 94, 95-96 (Tenn. Crim. App. 1977).

In this case, the trial court determined that an instruction on intoxication was not warranted because Defendant's intoxication did not "reach[] a level of being a defense." The trial court noted that there was no proof in the record that Defendant's intoxication had an "effect . . . on his mental capacity to form the specific intent to commit the aggravated robbery." We agree. In our view, the proof did not show that Defendant's intoxication negated the specific intent required to commit the offenses. Defendant admitted to the officers that he took Lortab prior to the incident but did not explain the degree of his intoxication to the officers. Additionally, his ability to clearly answer the questions during the interview and his willingness to confess to the crime tend to weigh against a finding that his intoxication had any effect on his intent to commit the crimes as he remembered the events with accurate clarity. Defendant admitted that he drove to the victim's house in a disguise, looked for her car, removed her air conditioner, entered the home, concealed a "weapon" in his sleeve, and stole items from the house. The trial court did not err in refusing to give the jury an instruction on voluntary intoxication. *See State v. Ronald Duckett*, No. W2010-02158-CCA-R3-CD, 2012 WL 1524373, at *4 (Tenn. Crim. App. Apr. 30, 2012) (determining instruction not warranted where evidence at trial established that Defendant had alcohol, marijuana, and cocaine prior to committing crime but there was no evidence presented about his degree of intoxication at the time crime was committed), *perm. app. denied* (Tenn. Sept. 19, 2012). Defendant is not entitled to relief on this issue.

## V. Sufficiency

Defendant challenges the sufficiency of the evidence for his convictions for aggravated robbery and employing a firearm during a dangerous felony. In his view, there was no "actual weapon" used during the offense or recovered after the offense but, rather, "just an object that [wa]s perceived to be a weapon." Additionally, Defendant claims that the lack of proof that a weapon was used renders the evidence insufficient to support his conviction for aggravated robbery. The State insists that the proof was sufficient to support the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v.*

*Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Aggravated robbery is an "intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. §§ 39-13-401(a), -402(a)(1). The offense of employing a firearm during the commission of a dangerous felony is comprised of three elements: (1) that defendant employed a firearm; (2) that employment was during the commission or attempted commission of a dangerous felony; and (3) that defendant acted intentionally, knowingly, or recklessly. T.C.A. §§ 39-11-301(c), 39-17-1324(b). In this case, the dangerous felony is aggravated burglary. *See* T.C.A. § 39-17-1324(i)(1)(H).

Defendant couches his challenge to the sufficiency of the evidence as a challenge to the State's proof that there was a weapon used during the commission of the offenses. Defendant argues that while the victim testified that he had a gun during the incident, she described the weapon consistently with what Defendant informed officers was mace. In other words, the gist of Defendant's argument is that the victim was not an entirely credible witness. Repeatedly, defendants have been reminded on appeal that this Court is not the arbiter of the credibility of witnesses or the weight to be given to their testimony. *See, e.g.*, *Wagner*, 382 S.W.3d at 297 (quoting *Campbell*, 245 S.W.3d at 335). In fact, even "numerous inconsistencies" in testimony do not serve to undermine a jury's verdict on appeal. *State v. Joseph Cordell Brewer, III*, No. W2014-01347-CCA-R3-CD, 2015 WL 4060103, at *5 (Tenn. Crim. App. June 1, 2015), *no perm. app. filed*; *State v. David Dwayne Smith*, No. E2007-00084-CCA-R3-CD, 2009 WL 230696 (Tenn. Crim. App. Feb. 2, 2009), *perm. app. denied* (Tenn. Aug. 17, 2009); *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) ("[A]lthough inconsistencies or inaccuracies may make the witness a less credible witness, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt.").

The evidence presented herein is sufficient to support the convictions. The victim testified that Defendant broke into her home, held her at gunpoint, and stole items from her home. She described the gun and the manner in which Defendant held and pointed the gun during the encounter. Defendant claimed in his interview that he was carrying mace, not a gun. The jury heard the testimony and weighed the credibility of the witnesses, finding in favor of the State's witnesses. We will not disturb this finding on appeal. Defendant is not entitled to relief.

*VI. Jury Bias*

In a motion for new trial, Defendant claimed that he should be granted a new trial on the basis of jury bias. Specifically, Defendant argued that "there may have been jury bias based upon the police beatings broadcast on the news the same day of trial, in the same neighborhood as the events in the present case." Defendant explains that he was unaware that the events were happening during trial and, therefore, did not request a continuance. He now urges this Court to remedy what he perceives as a presumption of bias. The State insists that Defendant is not entitled to relief because he failed to ask about the issue during voir dire and declined to call witnesses at the hearing on the motion for new trial to substantiate his claim of bias.

Every criminal defendant has a constitutional right to a trial "by an impartial jury." U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also State v. Sexton*, 368 S.W.3d 371, 390 (Tenn. 2012). Jurors must render their verdict based only upon the evidence introduced at trial, weighing the evidence in light of their own experience and knowledge. *Caldararo ex rel. Caldararo v. Vanderbilt Univ.*, 794 S.W.2d 738, 743 (Tenn. Ct. App. 1990). "A court may discharge from service a . . . petit juror . . . who is disqualified from such service, or for any other reasonable or proper cause, to be judged by the court," including "[t]hat a state of mind exists on the juror's part that will prevent the juror from acting impartially." T.C.A. § 22-1-105. Generally, juror disqualifications are based upon one of two theories: (1) *propter defectum*, meaning "[o]n account of or for some defect," Black's Law Dictionary 1385 (Rev. 4th ed. 1968), or (2) *propter affectum*, meaning "[f]or or on account of some affection or prejudice," *id.* *See also State v. Akins*, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993). A presumption of juror bias arises "'[w]hen a juror willfully conceals (or fails to disclose) information on voir dire which reflects on the juror's lack of impartiality. . . .'" *Carruthers v. State*, 145 S.W.3d 85, 95 (Tenn. Crim. App. 2003) (citing *Akins*, 867 S.W.2d at 355). Bias has never been presumed "absent either an affirmative statement of bias, willful concealment of bias, or failure to disclose information that would call into question the juror's bias." *Smith v. State*, 357 S.W.3d 322, 348 (Tenn. 2011). The defendant must establish a prima facie case of bias or partiality. *Akins*, 867 S.W.2d at 355

In this case, Defendant is arguing that police beatings that took place nearby during voir dire and during trial required a presumption of jury bias. Defendant has not presented any evidence in the form of witnesses or affidavits to support his claim or explained why or how these events would have affected the jury. In other words, he has not shown actual bias or impartiality. Therefore, Defendant is not entitled to relief on this issue.

## VII. Sentencing

Defendant complains that his sentence of ten years is excessive. Specifically, he argues that the trial court did not fully consider the victim's statement and failed to consider his cooperation with authorities, potential for rehabilitation, and good faith attempt to compensate the victim. The State notes that the trial court did not abuse its discretion in fashioning a within-range sentence for Defendant.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008).

In this case, the trial court filed an extensive sentencing order explaining the manner of service of the sentence. The trial court determined that Defendant had a previous history of criminal conduct in addition to that necessary to establish the appropriate range and that the Defendant had no hesitation about committing a crime when the risk to human life was high. *See* T.C.A. § 40-35-114(1), (10). The trial court also considered the fact that Defendant assisted the police in recovering the stolen property and expressed remorse about his actions. *See* T.C.A. § 40-35-113(10), (13). However, the trial court found that confinement was necessary to protect society by restraining a defendant who had a long history of criminal conduct. T.C.A. § 40-35-103(1)(A). Additionally, the trial court determined that confinement was necessary to avoid depreciating the seriousness of the offense and to provide an effective deterrent to others likely to commit similar offenses. T.C.A. § 40-35-103(1)(B).

The trial court initially sentenced Defendant to six years for employing a firearm during a dangerous felony, nine years for aggravated robbery, and four years for aggravated burglary. The sentencing order specified that the aggravated robbery and aggravated burglary sentences would run concurrently with each other and with a sentence for aggravated assault from another case but that the sentence for employing a firearm during a dangerous felony would run consecutively to all other sentences, for a total effective sentence of fifteen years.

After sentencing, Defendant filed a motion to correct the sentence on the basis that the jury instructions specified that the dangerous felony was aggravated burglary and, therefore, the sentence for employing a firearm during the commission of a dangerous felony could only be served consecutively to the aggravated burglary conviction. The trial court agreed and entered amended judgments to reflect that the six-year sentence for employing a firearm during the commission of a dangerous felony would run consecutively to the four-year sentence for aggravated burglary but concurrently to the nine-year sentence for aggravated robbery and four-year sentence for aggravated assault from the other case. Thus, Defendant's total effective sentence was amended to ten years.

Now, Defendant asks this Court to reduce his sentence on the basis that the victim told counsel for Defendant that she would be fine with a six year sentence. We decline to

do so.  The victim stated at the sentencing hearing that she did not remember exactly what she said other than that Defendant should be "locked up."  The trial court did not abuse its discretion in sentencing Defendant to a within-range sentence for his convictions.  Sentence lengths are not controlled by the victims of the crime.  *See State v. Ring*, 56 S.W.3d 577, 583 (Tenn. Crim. App. 2001) ("Whenever victim impact information contains relevant and reliable evidence relating to enhancing or mitigating factors and/or any other sentencing consideration, the trial court should consider it and determine what weight, if any, should be given to that evidence.").  Defendant is not entitled to relief on this issue.

### VIII.  Cumulative Error

Defendant argues that cumulative error requires reversal of his convictions. Because we have determined that Defendant is not entitled to relief with regard to any of his issues, it is unnecessary for us to address Defendant's argument with regard to cumulative error.

### Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
TIMOTHY L. EASTER, JUDGE