IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2021

## ZACHARY GALE RATTLER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sevier County**
**No. 19043     James L. Gass, Judge**

––––––––––––––––––––––––––––––––––

## No. E2020-01533-CCA-R3-PC

––––––––––––––––––––––––––––––––––

The Petitioner, Zachary Gale Rattler, appeals the denial of his petition for post-conviction relief, arguing that he was deprived of a fair and impartial jury and received ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT D. WEDEMEYER and D. KELLY THOMAS, JJ., joined.

William L. Wheatley, Sevierville, Tennessee, for the appellant, Zachary Gale Rattler.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Ronald C. Newcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

In 2015, following a jury trial, the Petitioner was convicted of attempted first degree murder, aggravated burglary, especially aggravated robbery, and possession of a prohibited weapon and was sentenced to an effective term of sixty years, eleven months, and twenty-nine days in the Tennessee Department of Correction. This court affirmed the convictions and sentences on direct appeal, and our supreme court denied the Petitioner's application for permission to appeal. *State v. Zachary Gale Rattler*, No. E2015-01570-CCA-R3-CD, 2016 WL 6111645, at *1 (Tenn. Crim. App. Oct. 19, 2016), *perm. app. denied* (Tenn. March 8, 2017).

The Petitioner's convictions arose from his entering the Sevier County home of the victim, Mr. Toby Norton, to steal firearms and other valuables and his seriously injuring the victim with a knife when the victim attempted to stop him. *Id.* at *1-2. The victim returned home in the middle of the burglary to be confronted by the Petitioner, who stepped out from behind a bedroom door with the victim's own hunting rifle pointed at the victim. *Id.* at *1. The victim testified that he did not know the Petitioner and asked him what he was doing in his home. *Id.* The Petitioner ordered him to sit on the couch and to wait for Mr. Bo Reed, who was a friend of the victim. *Id.* Instead of complying, the victim knocked the rifle away, put the Petitioner in a headlock, punched him twice, and knocked him to the ground. *Id.* While the victim was on the telephone reporting the crime to a 911 dispatcher, the Petitioner drew a knife and stabbed the victim in the side. *Id.* The victim fell to the floor, and the Petitioner pulled his head back and cut his throat so deeply that the victim's tongue was cut inside his mouth. *Id.* The victim continued to struggle with the Petitioner and managed to free himself by biting the Petitioner's hand. *Id.* The victim got up and ran toward the door, but the Petitioner pursued and stabbed him twice more in the back before fleeing in the victim's vehicle. *Id.* Police officers arrived as the Petitioner was speeding out of the victim's drive, stopped the vehicle, and arrested the Petitioner. *Id.* at *2. In a "mostly incomprehensible" written statement that the Petitioner provided that night, he "indicated that he was having a problem with his living arrangements." *Id.*

The following day, officers learned from Mr. Reed's mother that the Petitioner had lived with Mrs. Reed for approximately one month before he and Mr. Reed got into an altercation. *Id.* Mrs. Reed told the officers that Mr. Reed had dropped the Petitioner and his belongings at the victim's home. *Id.* She also reported that Mr. Reed had been "messing around" with the victim's girlfriend, Ms. Tiffany Grimmet, a fact that was corroborated by a police officer's testimony that a few weeks before the instant offenses, he had been at a traffic stop where he had seen Mr. Reed and Ms. Grimmet kissing in the backseat of the victim's vehicle. *Id.*

One month after his trial, the Petitioner filed a "Motion to Reconvene Jury," subsequently denied by the trial court, in which he asserted that the jury verdict was not unanimous because one juror did not vote guilty. *Id.* at *3, *9. He further asserted that another juror failed to disclose the juror's knowledge of the victim, Ms. Grimmet, and Mr. Reed. *Id.* at *3.

The Petitioner also raised the juror issues in his motion for new trial, attaching to one of the amendments to the motion the affidavit of Juror Emily McGaha, who claimed that she had not voted to convict the Petitioner and that a fellow juror had stated that Mr. Reed and Ms. Grimmet were unable to attend the Petitioner's trial because they were both in jail. *Id.* at *4. At the hearing on the motion, the trial court sustained the prosecutor's

hearsay objection to the introduction of the affidavit, noting that the court had asked the jurors at the conclusion of the trial whether the verdict as announced by the foreperson was their verdict and that each individual juror raised his or her hand. *Id.* The trial court's response to defense counsel's argument that the allegations in the verdict "reach[ed] the point of being an external influence" was to find that Juror McGaha's credibility was "gravely impacted" by her affidavit statement because she had been under oath when she raised her hand to indicate she joined in the guilty verdict. *Id.*

Among the issues the Petitioner raised on direct appeal was whether the trial court erred in denying his motion to reconvene the jury to determine the real verdict of the jurors, *id.* at *9, and whether he was denied his right to trial by a fair and impartial jury due to a juror's failure to disclose that the juror was acquainted with Mr. Reed and Ms. Grimmet and the juror's statement during deliberations that the two were in jail. *Id.* at *10. This court rejected both claims. With respect to the first issue, we noted that a jury may not be reconvened to correct or amend its original verdict after it has been discharged but that, in any event, the record reflected that "each of the jurors signified that the announced verdict was his or her own verdict." *Id.* at *9. With respect to the second issue, we concluded that the Defendant failed to meet his burden of proving a prima facie case of bias or partiality because he failed to establish that the unidentified juror "willfully concealed or failed to disclose information during voir dire tending to indicate a lack of impartiality." *Id.* at *10. On this point, we noted that the venire members were never asked whether they knew Mr. Reed or Ms. Grimmet. *Id.*

The Petitioner later filed a pro se petition for post-conviction relief, followed by an amended petition after the appointment of post-conviction counsel. Among other things, the Petitioner alleged in the original and amended petition that he was denied his constitutional right to an impartial jury due to jurors' bias and misconduct and that his trial counsel provided ineffective assistance for not subpoenaing Mr. Reed for trial. With respect to the biased juror claim, the Petitioner relied on a new affidavit of Ms. McGaha, attached to the petition, in which she stated that she had heard a male juror say that he knew the victim.

At the post-conviction hearing, Ms. Emily McGaha identified her affidavit and testified that she had not wanted to find the Petitioner guilty, although she had raised her hand with the other jurors. Had the trial judge polled her individually as to whether her verdict was to convict, her answer would have been "[n]o." She further testified that during one of the breaks at the trial, she heard a fellow juror state that the juror knew the victim.

On cross-examination, Ms. McGaha acknowledged that she had control of her faculties and that no one forced her to raise her hand. She stated, however, that her raising of her hand was "kind of sarcastic." She said she had been told that her opinion did not

matter. She acknowledged that no one told her that in open court. When asked if she had difficulty understanding the trial court's instructions, she retorted that she was not "stupid." She then acknowledged that she had affirmed that she would be an impartial and unbiased juror when she and her fellow jurors were impaneled.

Trial counsel, who at the time of the hearing had served thirty-one years as public defender in the Fourth Judicial District, testified that he and his investigator "looked endlessly" for Mr. Reed but never located him or an address at which to subpoena him. According to counsel's notes, someone told counsel's investigator that Mr. Reed was in jail in South Carolina. Trial counsel was confident his investigator followed up on that lead, but he had nothing in his notes to indicate what efforts the investigator made, other than that the investigator had gone to Mrs. Reed's residence six times.

Trial counsel testified that he wanted to talk to Mr. Reed to confirm the account that the Petitioner had provided him. Trial counsel said he did not know that he would have called Mr. Reed as a witness without first having the opportunity to interview him. In response to a question from the post-conviction court, trial counsel testified that it was never their defense theory that Mr. Reed committed the crime. Instead, he had wanted only to show that Mr. Reed and the Petitioner had argued and that Mr. Reed had taken the Petitioner to the alleged victim's house to stay.

Trial counsel could not remember if the trial court had asked if he wanted the jurors polled on their verdicts but said it was the court's regular practice to do so. He stated that he probably did not inform the Petitioner that he had the option of requesting that the jurors be individually polled.

On cross-examination, trial counsel acknowledged that he used all available information and efforts to locate Mr. Reed. He agreed that other witnesses, particularly Mrs. Reed, were available to impeach the victim's claim that he did not know the Petitioner. He further acknowledged that Mr. Reed had an extensive criminal history that the State could have used to impeach him had he been called as a defense witness at trial.

At the conclusion of the hearing, the post-conviction court denied the petition on the basis that the Petitioner failed to meet his burden of proving his allegations. Among other things, the court found that Ms. McGaha was not credible and that the Petitioner failed to show that counsel was deficient for not calling Mr. Reed as a witness or that the Petitioner was prejudiced by Mr. Reed's failure to testify in his defense.

- 4 -

## ANALYSIS

The Petitioner contends that he is entitled to post-conviction relief on two grounds: the unidentified juror's failure to disclose that he was acquainted with the victim, which deprived the Petitioner of his constitutional right to a trial by a fair and impartial jury; and trial counsel's failure to subpoena Mr. Reed as a defense witness, which deprived the Petitioner of his constitutional right to receive the effective assistance of trial counsel. Under the Post-Conviction Procedure Act, a petitioner is entitled to relief when "the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, we defer to the post-conviction court's findings regarding the credibility of witness, the weight and value of the witness's testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.*

### I. Impartial Jury

The Petitioner first contends that he was deprived of his constitutional right to a fair and impartial jury. Relying on Ms. McGaha's testimony, the Petitioner argues that the juror's failure to disclose his knowledge of the victim during voir dire results in a presumption of bias.

The right to a trial by an impartial jury is guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, section 9 of the Tennessee Constitution. *State v. Davidson*, 509 S.W.3d 156, 193 (Tenn. 2016). Challenges to juror qualifications are classified as either *propter defectum*, or "on account of defect," *or propter affectum*, or "on account of prejudice." *Carruthers v. State*, 145 S.W.3d 85, 94 (Tenn. Crim. App. 2003); *State v. Akins*, 867 S.W.2d 350, 354-5 (Tenn. Crim. App. 1993). As we observed in our direct appeal opinion, "[w]hen a juror willfully conceals or fails to disclose information during voir dire which reflects on the juror's lack of impartiality, a presumption of prejudice arises." *Zachary Gale Rattler*, 2016 WL 611645, at *10 (citing *Akins*, 867 S.W.2d at 355). A presumption of bias "may be dispelled by an absence of actual favor or partiality by the juror." *Carruthers*, 145 S.W.3d at 95 (citing *State v. Taylor,* 669 S.W.2d 694, 700 (Tenn. Crim. App. 1983)). Whether a defendant's constitutional right to an impartial jury has been violated is a mixed question of fact and law that the appellate court reviews de novo, giving a presumption of correctness only to

the trial court's findings of fact. *State v. Adams*, 405 S.W.3d 641, 656 (Tenn. 2013) (citation omitted).

The Petitioner acknowledges that the post-conviction court found that Ms. McGaha was not credible. He asserts, however, that the court's finding of her lack of credibility was tied to her testimony regarding her guilty vote rather than to her testimony regarding what she heard from the unidentified juror. We respectfully disagree. In support of its finding that Ms. MaGaha was not credible, the post-conviction court cited the fact that she was under oath when she raised her hand to indicate to the trial court that she joined in the guilty verdict, yet claimed at the post-conviction hearing that she had been acting sarcastically. When read in context, it is clear that the post-conviction court found Ms. McGaha not a credible witness in general, and not just that her testimony with respect to her guilty vote was not credible. Thus, the only evidence the Petitioner presented of the unidentified juror's alleged statement indicating possible bias was the testimony of a witness who was found to lack credibility. The Petitioner has not shown that he is entitled to post-conviction relief on the basis of his claim that he was deprived of an impartial jury.

## II. Ineffective Assistance of Counsel

The Petitioner next contends that he was denied the effective assistance of counsel. A criminal defendant has a right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to assistance of counsel inherently guarantees that counsel's assistance is "effective." *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). To prove that counsel was ineffective, a petitioner must show that (1) counsel performed deficiently and (2) such deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. This standard requires a petitioner to demonstrate that the "services rendered or the advice given" were "'below the range of competence demanded of attorneys in criminal cases.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Counsel must have made errors so serious that counsel was not functioning as the "'counsel'" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Measuring counsel's performance requires giving deference to counsel's decisions, and courts must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 669. Accordingly, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and

cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland* 466 U.S. at 689). The "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Adequate preparation includes counsel's "duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691).

To demonstrate that counsel's deficient performance prejudiced the defense, a petitioner must prove "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Dellinger*, 279 S.W.3d at 294 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a petitioner must establish both deficiency and prejudice to show ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed to establish one of them. *See Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The Petitioner's claim of ineffective assistance of counsel is based on counsel's failure to subpoena Mr. Reed as a defense witness. We note that the Petitioner did not call Mr. Reed as a witness at the evidentiary hearing. When a petitioner bases a claim of ineffective assistance on counsel's failure to interview or call a witness for his defense, the witness should be presented at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner."). Moreover, trial counsel, an experienced defense attorney, testified that he and his investigator exhausted all available means to locate Mr. Reed but were never successful. Trial counsel further testified that he was interested in Mr. Reed to corroborate the Petitioner's account of having been dropped at the victim's house by Mr. Reed but was not sure that he would have called Mr. Reed as a witness had he located him. Trial counsel agreed that other witnesses were able to impeach the victim's claim that he did not know the Petitioner, and that Mr. Reed would have been subject to intense impeachment by the State had he testified. The Petitioner has not shown that he is entitled to post-conviction relief on the basis of his claim of ineffective assistance of counsel.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE