FILED

02/10/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 21, 2025

**JASON LEE FISHER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Marshall County**
**Nos. 14-CR-6-PC, 11-CR-103, 11-CR-104, 11-CR-105, 11-CR-106**
**Forest A. Durard, Jr., Judge**

_____

**No. M2025-00125-CCA-R3-ECN**

_____

This consolidated appeal is before this court on the Petitioner, Jason Lee Fisher's, application for permission to appeal the Marshall County Circuit Court's denial of his petition for a writ of error coram nobis and the denial of his motion to reopen post-conviction proceedings. The Petitioner argues that the circuit court[1] erred in denying both his petition for a writ of error coram nobis and his motion to reopen post-conviction proceedings based upon a claim of juror bias during his trial. He also raises constitutional challenges to the error coram nobis and motion to reopen post-conviction statutes. Finally, he contends that the circuit court erred by finding that he failed to establish prejudice on his juror bias claim. Discerning no error, we affirm the judgment of the circuit court denying the petition for a writ of error coram nobis, and we deny the Petitioner's application for permission to appeal the denial of his motion to reopen post-conviction proceedings.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Nicholas W. Utter, Fayetteville, Tennessee, for the appellant, Jason Lee Fisher.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Robert J. Carter, District Attorney General; and Lee Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] We will refer to the lower court as "the circuit court" to avoid confusion as it served both as the post-conviction court and the coram nobis court in this case.

# OPINION

## I.  FACTUAL AND PROCEDURAL HISTORY[2]

In November 2011, a Marshall County Grand Jury indicted the Petitioner on multiple counts of aggravated burglary, theft of property, and vandalism of four separate homes occurring between the dates of September 23, 2011, and October 2, 2011. *State v. Fisher,* No. M2013-00220-CCA-R3-CD, 2013 WL 5827652, at *1 (Tenn. Crim. App. Oct. 29, 2013), *no perm. app. filed.*  Each incident was indicted separately, but they were consolidated into a single trial held in September 2012. *Id.*  The jury found the Petitioner guilty as charged.  On November 28, 2012, following the Petitioner's sentencing hearing, the trial court imposed an effective sentence of forty-five years as a career offender. *Id.* at *6.

On direct appeal, the Petitioner challenged the sufficiency of the evidence on each of his convictions and the length of his sentences. *Id.*  On October 29, 2013, the Petitioner's convictions and sentences were affirmed, with a remand to correct a clerical error on one of his judgments. *Id.* at *11.

On February 13, 2014, the Petitioner filed a petition for post-conviction relief, claiming he received ineffective assistance of trial counsel on various grounds, including issues related to the suppression of evidence discovered during the inventory search of his vehicle.  The post-conviction court denied the petition, and this court affirmed the post-conviction court's findings. *Fisher v. State*, No. M2014-02327-CCA-R3-PC, 2015 WL 5766521, at *1 (Tenn. Crim. App. Oct. 2, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016).

Subsequently, in October 2016, the Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Tennessee. *Fisher v. Lee*, Case No. 2:16-cv-334, 2019 WL 3619379, at *1 (E.D. Tenn. Aug. 5, 2019).  In that proceeding, the Petitioner claimed his convictions were based on the use of evidence gained pursuant to an unconstitutional search and seizure in violation of the Fourth Amendment and that he was denied the effective assistance of trial counsel when counsel failed to competently argue the motion to suppress evidence found during the search of the locked trunk of his car. *Id.*  The federal habeas corpus court determined that, as related to his Fourth Amendment claim, the Petitioner had failed to provide grounds to excuse his procedural default and, alternatively, that the claim was without merit. *Id.* at *5.  On his

---

[2] To assist in the resolution of this proceeding, we take judicial notice of the record from the Petitioner's direct appeal and the Petitioner's appeal from the denial of his petition for post-conviction relief. *See* Tenn. R. App. P. 13(c).

ineffective assistance claim, the federal habeas corpus court determined the state post-conviction court's rejection of his claim was neither contrary to nor an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), as the proof at the state "post-conviction proceedings failed to establish the success of a suppression motion based on the inventory search of his vehicle." *Id*. at *7. Accordingly, the federal habeas corpus court denied relief and denied a certificate of appealability. *Id*.

On October 20, 2023, the Petitioner filed a *pro se* petition for a writ of error coram nobis in the circuit court, arguing that he was entitled to a new trial based upon newly discovered evidence related to one of his trial jurors.[3] Specifically, he claimed the following:

> On or about December 31, 2022[,] Nick Patterson was approached by Malia Caldwell, and [she] asked Nick Patterson [where] was his cousin[, the Petitioner.] Nick Patterson responded [that] he is still in prison. . . . Malia Caldwell responded [that she] was on his Jury. Nick Patterson responded [that the Petitioner] had been to [her] house and [that she had] part[i]ed with him several times. . . . [S]he said[,] "I told the court I didn't know him[,] so I could stay on the Jury to get out of work.["]

The circuit court appointed counsel to represent the Petitioner on December 6, 2023.

While the petition for a writ of error coram nobis was still pending, the Petitioner, through counsel, filed a motion to reopen his post-conviction proceedings on January 30, 2024, relying on the same alleged facts and claiming he was unaware of the issue related to the juror for over a decade because he did not recognize her at trial. The Petitioner claimed he was entitled to relief based upon Tennessee Code Annotated section 40-30-117(a)(4), which he quoted as follows:

> [A] petitioner may file a motion in the trial court to reopen the first post-conviction petition only if the following applies . . . (4) It appears that the facts underlying the claim, if true, would establish by clear and convincing

---

[3] While the Petitioner did not use the term *propter affectum* in his pleadings, his arguments during the hearing raised a *propter affectum* claim. There are two categories for challenges to a juror's qualifications: *propter defectum*, which is "on account of defect," or *propter affectum*, which is "on account of prejudice." *Carruthers v. State*, 145 S.W.3d 85, 94 (Tenn. Crim. App. 2003) (citing *State v. Akins*, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993)). A *propter affectum* challenge, as raised by the Petitioner, is "based upon the existence of bias, prejudice, or partiality towards one party in the litigation actually shown to exist or presumed to exist from the circumstances" and may be raised after the verdict in a motion for new trial. *Carruthers*, 145 S.W.3d at 94; *Akins*, 867 S.W.2d at 355.

evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

Alternatively, the Petitioner requested that the circuit court grant him relief as matter of plain error. The Petitioner argued that the juror's inclusion on his jury prejudiced his right to a fair and impartial jury and injected potential bias into the deliberations. The Petitioner subsequently amended his motion to reopen on July 10, 2024, reiterating his original claim and raising an additional claim, which is not part of this appeal.

The State filed a response to the Petitioner's pleadings on July 22, 2024, in which it argued that the petition for a writ of error coram nobis was untimely and did not qualify for tolling of the statute of limitations pursuant to *Clardy v. State*, 691 S.W.3d 390 (Tenn. 2024). In addition, the State argued that the petition raised no claim of actual innocence, as required by law, and requested summary dismissal. Regarding the motion to reopen post-conviction proceedings, the State argued that the Petitioner misread the applicable statute; because subsections (1) through (3) of Tennessee Code Annotated section 40-30-117(a) are joined by the conjunction "or," the Petitioner must assert at least one of the three subsections before applying subsection (a)(4), which is joined to the prior three subsections by the conjunction "and." Therefore, the State argued that the statute's language did not support the catchall provision of subsection (a)(4) and that his claims failed to state a statutory basis for reopening his post-conviction proceedings.

The circuit court held a hearing on both the petition for a writ of error coram nobis and the motion to reopen post-conviction proceedings on August 15, 2024. Prior to the presentation of testimony, the parties argued their respective positions, and the Petitioner introduced several exhibits. These exhibits included an agreed-upon list of jurors from the Petitioner's trial, along with driver's license information, which indicated Ms. Caldwell was deceased at the time of the hearing, as well as an audio recording of the Petitioner's trial, including *voir dire*, opening statements, and closing arguments. Regarding his petition for a writ of error coram nobis, the Petitioner conceded that his claim regarding Ms. Caldwell's service on the jury was raised outside the statute of limitations and was not evidence of actual innocence. Nevertheless, he presented proof on the merits of the claim during the hearing. He asserted that the State asked the potential jurors numerous times during *voir dire* if anyone knew the Petitioner in any way, and that Ms. Caldwell never responded.[4] The Petitioner also noted that Ms. Caldwell had passed away after the Petitioner filed his petition for a writ of error coram nobis.

---

[4] The Petitioner provided the circuit court with specific time-stamp references to the audio exhibit from the trial.

The State responded that both the petition for a writ of error coram nobis and the motion to reopen failed to properly state a claim under the relevant statutes and that the petition was filed untimely. The Petitioner argued that Tennessee Code Annotated section 40-30-117(a)(4) created a "catchall" provision that would allow the motion to reopen to proceed.

At the hearing, trial counsel testified he did not recall Ms. Caldwell or any issue regarding her service on the jury. He also did not recall any conversation with the Petitioner about Ms. Caldwell, but he said that the Petitioner would have been positioned close to the jurors and should have had a good view of them.

Nicholas Patterson, the Petitioner's first cousin, testified that he had known the Petitioner his entire life and that he had known Ms. Caldwell for eighteen years before she died. He stated he also knew Ross Burgett, who had lived with and had a child with Ms. Caldwell. He further stated that Terri Lynn Nunley Slater, to whom he had been married for 13 years, was his ex-wife. He testified that he, the Petitioner, Ms. Caldwell, Mr. Burgett, and Ms. Slater had spent time together every weekend for at least a year to a year and a half, in or around 2011 to 2012. Mr. Patterson testified that he was aware during the trial that Ms. Caldwell was a juror on the Petitioner's trial, but he had no contact with her during the trial. He testified that he had not spoken to the Petitioner about Ms. Caldwell serving as a juror until a 2023 phone call.

Ms. Slater testified that she was Mr. Patterson's ex-wife, and she had been friends with Ms. Caldwell for many years because they had gone to school together. She testified that both the Petitioner and Ms. Caldwell were part of a group of ten to fifteen people who regularly attended cookouts and bonfires at Mr. Burgett's home. She testified that she was aware of "hearsay" about the Petitioner's criminal history at the time, but she stated that it had not been discussed in her "friend group," although she opined that they were aware he was a convicted felon. She testified that her mother and Mr. Burgett had both also been summoned as jurors but had not stayed on the jury panel. She learned that Ms. Caldwell had served on the jury months afterward, but she never discussed it with Ms. Caldwell.

Mr. Burgett testified that he dated Ms. Caldwell in 2012 and 2013, and their son was born in April 2013. He stated he met the Petitioner a "handful" of times during the 2012 timeframe when he was "hanging out" with Mr. Patterson and Ms. Slater. He agreed there were probably frequent cookouts, but he testified his interactions with the Petitioner during the cookouts were limited. He stated Ms. Caldwell would be with him during these interactions. Mr. Burgett stated he did not really know the Petitioner well. He and others were aware that the Petitioner had some criminal history, but Mr. Burgett stated the Petitioner's criminal history did not affect his opinion of him. He recalled being summoned for jury duty in the Petitioner's trial and that both he and Ms. Slater's mother were excused.

He recalled the courtroom being full of potential jurors, but he did not recall seeing Ms. Caldwell that day and never spoke with her about the Petitioner afterwards. He testified he heard of Ms. Caldwell's death in February of 2024.

The Petitioner testified that as he entered the courtroom for jury selection, he was told that his grandmother had died. He stated he did not see Ms. Caldwell the day of jury selection and was not aware that she was a juror for his trial until Mr. Patterson told him in 2023. The Petitioner testified that he had known Ms. Caldwell for a couple of years before his trial, but that Ms. Caldwell's hair was a different color when he knew her than in her driver's license photograph, which he was shown.[5] He testified he never really spoke to others about his past criminal history, but he thought it was generally known. He testified he did not think anyone in his group of friends held his past against him. On cross-examination, the Petitioner stated he was distracted when the court called the jurors' names and did not recall hearing Ms. Caldwell's name.

At the conclusion of the proof, the Petitioner argued that if the State's arguments were correct concerning the inapplicability of the writ of error coram nobis statute and the motion to reopen post-conviction proceedings statute, then he had a constitutional issue "without any means of remedy." He argued the statutes were unconstitutional for failing to provide a remedy or procedural mechanism to address the violation of a fundamental right. The Petitioner also maintained that Tennessee Code Annotated subsection 40-30-117(a)(4) created a catchall provision to allow his motion to reopen post-conviction proceedings to move forward. However, he conceded that he was unaware of any case law supporting his position. He also conceded that the State was correct that the usage of the "or" and "and" conjunctions in the motion to reopen post-conviction statute did not support the argument of a catchall provision. The State responded that the Petitioner's argument regarding the constitutionality of the statute was not properly before the court because it had not been pled in his motion to reopen and because the Tennessee State Attorney General's Office had not been given notice. The State reiterated its position that neither the writ of error coram nobis statute nor the motion to reopen post-conviction proceedings statute provided an avenue for relief for the Petitioner based upon the claims raised.

Regarding the Petitioner's claim that the relevant statutes were unconstitutional, the circuit court disagreed with the State's argument concerning the failure to notify the Attorney General's Office, but it agreed that the issue had not been pled, and therefore, declined to address it. Following the hearing, the circuit court entered a written order on January 2, 2025, denying both the petition for a writ of error coram nobis and the motion

---

[5] Exhibit 5 indicated that Ms. Caldwell's license was last issued on November 18, 2022, which was just over a decade after his trial. There was no evidence to establish the exact date of the photograph or that Ms. Caldwell's appearance at the time of the Petitioner's trial was the same as in the photograph.

to reopen post-conviction proceedings. The circuit court relied upon *Clardy v. State* and other case law in finding that the Petitioner's *propter affectum* claim relating to Ms. Caldwell was not a claim of actual innocence, and therefore, the Petitioner was not entitled to a tolling of the statute of limitations or any relief pursuant to the writ of error coram nobis statute. In addition, the circuit court found that the facts presented by the Petitioner regarding Ms. Caldwell did not meet the statutory criteria for reopening post-conviction proceedings. *See* Tenn. Code Ann. § 40-30-117(a).

Following the circuit court's ruling, the Petitioner filed both a timely notice of appeal of the denial of his petition for a writ of error coram nobis pursuant to Tennessee Rule of Appellate Procedure 3 and a timely application for permission to appeal the denial of his motion to reopen post-conviction proceedings pursuant to Tennessee Code Annotated section 40-30-117(c) and Tennessee Supreme Court Rule 28, section 10(B). On February 27, 2025, this court consolidated the separate appeals due to the "common issue presented and the dual nature of the proceedings in the trial court, and in the interest of judicial economy." *See* Tenn. R. App. P. 16(b).

## II.    ANALYSIS

In this consolidated appeal, the Petitioner argues that the circuit court erred in denying both his petition for a writ of error coram nobis and his motion to reopen post-conviction proceedings. He also raises constitutional challenges to the error coram nobis and motion to reopen statutes and contends that the circuit court erred by finding he failed to establish prejudice from Ms. Caldwell's presence on the jury.

The State responds that the circuit court did not err by denying the petition for a writ of error coram nobis because, even if the Petitioner established a valid *propter affectum* claim regarding Ms. Caldwell's presence on the jury, it is not evidence of actual innocence as required to toll the statute of limitations. The State further responds that the circuit court properly denied the Petitioner's motion to reopen post-conviction proceedings as his *propter affectum* claim is not a cognizable claim under Tennessee Code Annotated section 40-30-117(a). Lastly, the State responds that the Petitioner's claim that the statutes governing writs of error coram nobis and motions to reopen post-conviction proceedings are unconstitutional is waived because he failed to properly raise the issue in the circuit court.

### A.  PETITION FOR A WRIT OF ERROR CORAM NOBIS

We first address the Petitioner's claim that the circuit court erred in denying his petition for a writ of error coram nobis. The writ of error coram nobis is an "extraordinary procedural remedy . . . into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672

(Tenn. 1999). *See* Tenn. Code Ann. § 40-26-105(b). "[T]he petition must be pled with specificity," and an evidentiary hearing need only be conducted by the trial court when essential. *Clardy*, 691 S.W.3d at 400-01. A petition for a writ of error coram nobis must be filed within one year after the challenged judgment becomes final. Tenn. Code Ann. § 27-7-103. "A judgment becomes final in the trial court thirty days after its entry if no post-trial motions are filed[,] or . . . upon entry of an order disposing of [any] post-trial motion." *Mixon*, 983 S.W.2d at 670. The timeliness of the petition is an essential element that must be set forth on its face. *Nunley v. State*, 552 S.W.3d 800, 828 (Tenn. 2018). This one-year limitation, however, may be tolled on due process grounds if a petition seeks relief "based upon new evidence of actual innocence discovered after expiration of the limitations period." *Id*. at 828-29. The facts demonstrating the need for equitable tolling also must be set forth on the face of the petition. *Id.* at 829.

The decision to grant or deny coram nobis relief rests within the sound discretion of the coram nobis court, *see State v. Vasques*, 221 S.W.3d 514, 525-28 (Tenn. 2007), but "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness," *Nunley*, 552 S.W.3d at 830 (citation omitted).

In *Clardy v. State*, the Tennessee Supreme Court elaborated on the standard for equitable tolling of petitions for coram nobis relief. *Clardy*, 691 S.W.3d at 399. The court noted "[t]he analysis for relief on the merits of the petition is separate and distinct from the analysis for whether the statute of limitations may be tolled." *Id.* Where a petitioner seeks the tolling of the one-year statute of limitations for an untimely-filed petition for a writ of error coram nobis,

> the coram nobis court should first ascertain whether the petition cites new evidence discovered after expiration of the limitations period, and whether the coram nobis petition shows it was filed no more than one year after the petitioner discovered the new evidence. If so, the coram nobis court should assume *arguendo* the veracity of the new evidence cited in the coram nobis petition, for the purpose of assessing whether to toll the statute of limitations. To grant tolling, the coram nobis court must find that the new evidence would, if credited, clearly and convincingly show that the petitioner is actually innocent of the underlying crime, i.e., that the petitioner did not commit the crime.

*Id*. at 409 (citing *Keen v. State*, 398 S.W.3d 594, 612 (Tenn. 2012). Only after determining that due process requires the tolling of the statute of limitations should the trial court consider the merits of the petitioner's claims. *Clardy*, 691 S.W.3d at 409. To meet the clear and convincing standard of proof, the evidence offered must not be "vague and

uncertain," and there must be "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id*. at 408 (quoting *State v. Jones*, 450 S.W.3d 866, 893 (Tenn. 2014)). Therefore, to toll the statute of limitations for coram nobis proceedings, "the new evidence of actual innocence, if credited, should leave the court with no serious or substantial doubt that the petitioner is actually innocent." *Id.*

Despite the Petitioner's argument that we should consider the timeliness of his petition based upon the discovery of the information that Ms. Caldwell knew the Petitioner but did not advise the trial court, the law is clear that a petition for a writ of error coram nobis must be filed within one year after the challenged judgment becomes final. *See* Tenn. Code Ann. § 27-7-103. In the Petitioner's case, he filed his petition for a writ of error coram nobis in October of 2023, over a decade after his judgments became final. In addition, the Petitioner does not dispute that the evidence presented on his *propter affectum* claim is not evidence of actual innocence and, thus, cannot warrant tolling of the statute of limitations under *Clardy*. Accordingly, we conclude that the circuit court did not err in denying the untimely petition for a writ of error coram nobis because the Petitioner failed to allege any evidence of actual innocence.

## B.  MOTION TO REOPEN POST-CONVICTION PROCEEDINGS

The Petitioner has filed an application for permission to appeal the circuit court's denial of his motion to reopen his petition for post-conviction relief, which the State opposes. The Post-Conviction Procedure Act imposes limits on the nature, number, and timing of petitions for post-conviction relief. *See* Tenn. Code Ann. §§ 40-30-102, -103. Although the Act also provides a means for reopening previously filed petitions, the types of claims that may be raised in a motion to reopen are limited. *See* Tenn. Code Ann. § 40-30-117. Section 40-30-117(a) reads as follows:

(a) A petitioner may file a motion in the trial court to reopen the first post-conviction petition only if the following applies:

(1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; *or*

(2) The claim in the motion is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; *or*

(3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid; *and*

(4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

Tenn. Code Ann. § 40-30-117(a) (emphasis added).

"If the motion is denied, the petitioner shall have thirty (30) days to file an application in the court of criminal appeals seeking permission to appeal." Tenn. Code. Ann. § 40-30-117(c). The application must contain copies of all documents filed by both parties in the trial court, as well as the order denying the motion. *Id*. This court will grant an application for permission to appeal only if we conclude that the trial court abused its discretion in denying the motion to reopen. Tenn. Code Ann. § 40-30-117(c). A trial court abuses its discretion when it "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

While the Petitioner argues that subsection (a) establishes four grounds by which to seek a motion to reopen, our courts have held that only three limited grounds for relief are available in a motion to reopen post-conviction proceedings. *See Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004) (holding that Code section 40-30-117(a) "provides only three grounds for reopening post-conviction proceedings."). The language found in subsection (a)(4) does not stand alone to create a "catchall" provision as argued by the Petitioner but rather must be read in conjunction with subsections (a)(1)-(3), which is clearly indicated by the "or" following subsections (a)(1) and (a)(2), as opposed to the "and" following subsection (a)(3). Subsection (a)(4) establishes the standard for the burden of proof for subsections (a)(1)-(3). *See, e.g.*, *Abdur'Rahman v. State*, 648 S.W.3d 178, 194 (Tenn. Crim. App. 2020) ("Additionally, the motion must assert facts underlying the claim which, 'if true, would establish by clear and convincing evidence that the petitioner is

entitled to have the conviction set aside or the sentence reduced.'") (quoting Tenn. Code Ann. § 40-30-117(a)(4)). As the Petitioner explicitly acknowledges, and as the circuit court correctly found, his claims are not cognizable under any of the three limited grounds for relief delineated in Code section 40-30-117(a)(1)-(3).

Accordingly, we conclude the circuit court did not abuse its discretion in denying the Petitioner's request to reopen his post-conviction petition. The application for permission to appeal is, therefore, denied.

## C. CONSTITUTIONALITY OF THE STATUTES

The Petitioner also challenges the constitutionality of the writ of error coram nobis statute and the statute governing motions to reopen post-conviction proceedings because they do not provide him with an avenue of relief for his juror misconduct claim. The State responds that the Petitioner has waived this issue because he failed to properly raise it in the circuit court. We agree with the State.

As previously stated, a petition for a writ of error coram nobis "must be pled with specificity," and an evidentiary hearing need only be conducted by the coram nobis court when essential. *Clardy*, 691 S.W.3d at 400-01. We note that "neither the United States Constitution nor the Tennessee Constitution provides a criminal defendant with a constitutional right to error coram nobis relief." *Nunley*, 552 S.W.3d at 817 (quoting *Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016)). In fact, this court has held that error coram nobis is not a vehicle for raising constitutional claims. *See id*. at 819-20; *see also State v. Hall*, No. E1997-00344-SC-DDT-DD, 2019 WL 13188897, at *2 (Tenn. Dec. 3, 2019) (Order); *State v. Sutton*, No. E2019-01062-CCA-R3-ECN, 2020 WL 703607, at *4 (Tenn. Crim. App. Feb. 11, 2020). Here, the writ of error coram nobis petition contained no claim related to the constitutionality of the statute, and the circuit court declined to rule on the issue based upon the State's objection to it being orally raised at the hearing. Accordingly, we conclude that this issue is waived for appellate review.

The Petitioner's argument regarding the constitutionality of the motion to reopen statute is also waived because it was not first presented in either the original motion to reopen or the amended motion to reopen. Although the Petitioner raised it at the hearing, the circuit court declined to rule on the issue based upon the State's objection to its not being pled in the Petitioner's motions. Additionally, we note that this court's February 27, 2025 order consolidating this case cited to Tennessee Supreme Court Rule 28, section (10)(B) and limited the issues related to the application for permission to appeal the denial of the Petitioner's motion to reopen post-conviction proceedings to "the arguments already advanced in [the parties'] respective application and answer already on file." The Petitioner's application set forth the following issues only:

- 11 -

1) Whether the Trial Court erred in finding that [] [the Petitioner] was not entitled to relief under his *propter [affectum]* claim where a juror withheld information as to a casual relationship during *voir dire*, but the defendant was unable to show any inherently prejudicial relationship. [The Petitioner] maintains he met his burden of proof, and that the burden then shifted to the State to show actual prejudice, which the State failed to do.

2) Whether Tennessee's Post Conviction Statue prohibits reopening a prior post-conviction application based upon a violation of constitutional guarantees, as provided for by the Sixth and Fourteenth Amendment to the United States and the Article, I, Section 9 of the Tennessee Constitutions, which guarantee a criminal defendant the right to a trial by an impartial jury, where scientific evidence exonerating the Defendant is not pled.

Clearly, the Petitioner did not raise a challenge to the constitutionality of the motion to reopen post-conviction proceedings statute in his application. Accordingly, the constitutional challenge the Petitioner now seeks to advance is waived.

### D. CIRCUIT COURT'S FINDINGS ON *PROPTER AFFECTUM* ISSUE

The Petitioner lastly argues that the circuit court erred in basing its dismissal in part upon a failure to show actual prejudice as to Ms. Caldwell's serving on the jury. The Petitioner submits that a presumption of prejudice arose from the juror's deceit, and as such, the burden of proof shifted to the State to show an absence of prejudice, but the State provided no such proof. As previously stated, a petition for a writ of error coram nobis "must be pled with specificity," and an evidentiary hearing need only be conducted by the trial court when essential. *Clardy*, 691 S.W.3d at 400-01. Here, the circuit court held that the petition fell outside the statute of limitations and no evidence of actual innocence was presented to establish a basis for tolling the limitations period. In addition, the circuit court held that the Petitioner's motion to reopen post-conviction proceedings did not contain any cognizable claims pursuant to the statute. While the circuit court summarized the testimony and evidence presented during the hearing, these statements were not germane to the circuit court's obligation to determine the timeliness of the petition for a writ of error coram nobis and whether the motion to reopen presented a cognizable claim. The Petitioner is not entitled to relief.

### III. CONCLUSION

For the reasons set forth in this opinion, the Petitioner's application for permission to appeal the denial of his motion to reopen post-conviction proceedings is denied, and the Petitioner's appeal of the denial of his petition for a writ of error coram nobis is denied.

s/ *STEVEN W. SWORD*

STEVEN W. SWORD, JUDGE